622 P.2d 487

Stewart S. FREEDMAN and George Guckenberger, III, Plaintiffs-Appellees and Cross-Appellants,

v.

CONTINENTAL SERVICE CORPORATION, an Arizona Corporation; and The First National Bank of Arizona, a National Banking Association as Trustee under its Trust No. 10–40–3436–0, Defendants-Appellants and Cross-Appellees.

No. 1 CA–CIV 4573.

Court of Appeals of Arizona,
Division 1,
Department A.

Aug. 19, 1980.

Rehearing Denied Oct. 20, 1980.

Review Denied Nov. 4, 1980.

Kaplan, Kaplan, Jacobowitz & Hendricks, P. A. by Henry Jacobowitz, Phoenix, for plaintiffs-appellees and cross-appellants.

Jennings, Strouss & Salmon by Thomas J. Trimble, Phoenix, for defendant-appellant and cross-appellee Continental Service Corp.

Fennemore, Craig, von Ammon & Udall by Francis J. Slavin, Jr. and Patrick Wm. Paterson, Phoenix, for defendant-appellant and cross-appellee First Nat. Bank of Arizona.

## OPINION

FROEB, Presiding Judge.

This case involves a forfeiture of the buyer's interest in a land contract referred to as a subdivision trust agreement. The main issue is whether the trial court can exercise its equitable power to invalidate a forfeiture which complied with all applicable legal requirements. A related question is whether notices mailed to but not received by the buyer are sufficient to sustain the forfeiture.

The contract involved is what is generally known in Arizona as a "subdivision trust agreement." In it, the seller of land, referred to as the "first beneficiary," transfers title to a trustee under provisions of a trust. Upon payment of specified amounts, the buyer of the land, referred to as the "second beneficiary," is entitled to have designated portions of the land released and conveyed at various times. Usually a subdivision trust is entered into for the purpose of allowing the buyer to obtain ownership of portions of land over a period of time in order to develop it for resale.

The agreement in this case was made in 1961 when William and Viola Shafer sold certain real property in Maricopa County to Stewart S. Freedman and established a subdivision trust with Phoenix Title and Trust Company as trustee. In 1962, William and Viola Shafer created a personal family trust with Phoenix Title as trustee and transferred their interest as first beneficiary of the subdivision trust to Phoenix Title as trustee under the subdivision trust. In 1973, Phoenix Title discontinued its personal trust operations and the Shafer personal trust (which included their interest as first beneficiary of the subdivision trust) was transferred to First National Bank of Arizona as trustee. The subdivision trust itself remained under the administration of Phoenix Title. In another change, Continental Service Corporation (hereafter referred to as Continental) became the successor to Phoenix Title as trustee under the subdivision trust.

The subdivision trust required that the second beneficiary make, on or before May 30 of each year, annual payment of principal and interest in specified amounts. The first five annual installments (1962 through 1966) were regularly paid by Freedman. However, the payments due for the next five years (1967 through 1971) were not paid until May 1972. The evidence indicates that this was due to Freedman's desire to divert the money due on the contract at six percent interest into other investments for a higher rate of return.

In May of 1972, Freedman found a purchaser for a portion of the trust property and paid $55,276.96 to Continental in order to obtain release of the land from the trust. The amount was first applied to pay delinquent payments of 1967 through 1971 and

the then due 1972 payment. The remainder was applied as a prepayment of the part of the outstanding principal balance. No further annual payments were made by Freedman, although he received notices of payment due from Continental. Freedman had instructed his bookkeeper, Hal Perrine, not to make any payments when a "notice of payment due" was received, but rather to wait until a notice of default was given.

In May 1976, William Shafer received an accounting from First National Bank which showed the balance due for the subdivision trust had not been reduced since 1972. At Shafer's request, the First National Bank, holding the seller's interest as first beneficiary of the subdivision trust, instructed Continental by letter to commence a "default action" pursuant to the terms of the trust. Continental did so by mailing to Freedman, at the address he provided, a "Notice of Default and Insistence of Time of the Essence Clause," hereafter referred to as the "notice of default." The notice provided, in substance, that all amounts due and owing were to be paid to Continental within thirty days. The notice was sent June 25, 1976, by mail as provided by the terms of the trust and the customary procedures used by Continental. No payment being received, Continental mailed to Freedman a "Notice and Declaration of Forfeiture and Acceleration," hereafter referred to as the "notice of forfeiture."

After the grace period allowed by A.R.S. § 33–741 expired without redemption by Freedman, Continental conveyed title to the subdivision trust property to First National Bank, as first beneficiary, by special warranty deed dated June 13, 1977. The trust file was then closed by Continental.

On June 22, 1977, Freedman, through his attorney, sent a letter to Continental and offered to pay the entire unpaid principal balance and accrued interest due under the trust agreement in exchange for title to the trust property. This was followed, on July 5, 1977, by a tender of personal checks for $72,000.00, which were returned.

The complaint in this action was thereafter filed on August 19, 1977, praying that the conveyance of the trust property to First National Bank and the underlying trust forfeiture be declared void. First National Bank and Continental thereafter filed motions for summary judgment on the ground that the forfeiture had been completed in strict compliance with the terms of the trust agreement and in accordance with Arizona law and should not be set aside. Freedman filed a cross-motion for summary judgment on the ground that notice of the default and insistence on time of the essence clause had not been personally served upon him, nor did he receive actual notice thereof and that to deny the requested relief would be inequitable. The trial court denied summary judgment in favor of First National Bank and Continental and granted Freedman's motion. In a post-judgment hearing, the trial court explained that its ruling was based upon application of equitable principles.

The issues on appeal are narrow. Freedman argues that the subdivision trust agreement, properly construed, does not alter what he argues is a legal requirement that he actually *receive* notice of the first beneficiary's intent to require strict performance and to insist upon the "time-of-the-essence" provision. Since he avers he did not receive the notice, he contends that the forfeiture must be set aside on this ground. Other than this, there is no argument that the procedures for forfeiture expressed in the agreement were not followed correctly. There is no contention that the grace period for forfeiture set forth in A.R.S. § 33–741 was not fully allowed. Alternatively, Freedman argues that even if notice of strict compliance need only have been mailed but not necessarily received, the court may exercise its equitable power to set aside the forfeiture.

Appellants Continental and First National Bank contend that the agreement requires only a correct mailing of both the notice requiring strict compliance and the notice of forfeiture and not actual receipt. They argue alternatively that if actual receipt is required there is a genuine issue of fact as to whether it was received, justify-

ing reversal of the summary judgment and a trial on that question. They also argue that if receipt of notice is not required, the correct mailing of the required notices is undisputed and they were entitled to summary judgment upholding the forfeiture. They contend that the court may not exercise its equitable powers to set aside a forfeiture made in strict compliance with Arizona law and the written agreement of the parties.

■ With respect to enforcement of the forfeiture provisions of land contracts generally, Arizona law is well settled as to what is required of the seller. When he has waived strict performance of the provisions of the agreement concerning payment of installments, he cannot forfeit for subsequent failure to pay until the buyer is notified of the seller's intention to insist upon strict performance and given a reasonable opportunity to bring payments to date. *Arizona Title Guarantee & Trust Company v. Modern Homes, Inc.*, 84 Ariz. 399, 330 P.2d 113 (1958); *Onekama Realty Company v. Carothers*, 59 Ariz. 416, 129 P.2d 918 (1942); *Jahnke v. Palomar Financial Corporation*, 22 Ariz.App. 369, 527 P.2d 771 (1974). Having done so, if the buyer thereafter defaults, the seller may forfeit the interest of the buyer and cancel the agreement in accordance with its terms. Freedman does not contend that appellants failed to follow these steps.

■ We turn first to the question of notice. Both sides agree with the basic rule that where notice is involved, *actual* notice is required, except where otherwise provided by contract or statute. *Goodman v. Jones*, 102 Ariz. 532, 433 P.2d 980 (1967).

Paragraph VIII of the subdivision trust agreement deals with notice and, in relevant part, reads as follows:[1]

Time is of the essence of this agreement and of each and every term and condition herein, and full performance by the Second Beneficiaries of all of their obligations hereunder is and shall be a condition precedent to their right to have a conveyance of the lots held hereunder and their right to have performance hereof.

If default be made in the payment of principal or interest of the purchase price or upon breach by said Second Beneficiaries of any covenant, condition or stipulation hereof and such default be not remedied within thirty days after notice to the Second Beneficiaries, then the First Beneficiaries may declare all sums agreed to be paid by the Second Beneficiaries immediately due and payable .... The Second Beneficiaries shall be deemed to be in default only when written notice thereof has been filed with the Trustee by the First Beneficiaries.

The Second Beneficiaries agree to pay all costs and expenses of any action commenced by the First Beneficiaries or by the Trustee to enforce this agreement, including reasonable attorneys' fees to be fixed by the court in the event that judgment is rendered in favor of the First Beneficiaries or of the Trustee.

In case the First Beneficiaries elect to enforce a forfeiture hereunder all of the rights of the Second Beneficiaries may be cancelled and forfeited hereunder unless such default be remedied within the time provided by law ....

Forfeiture and cancellation may be made in the following manner:

By serving upon the Second Beneficiaries a written declaration of forfeiture or by depositing in the United States mail, postage prepaid, such written declaration of forfeiture addressed to the Second Beneficiaries at

[Stewart S. Freedman
Post Office Box 7636
Phoenix, Arizona]

or such other Post Office address as the Second Beneficiaries shall have filed with the Trustee. Upon such declaration of forfeiture being made by the First Beneficiaries as provided herein, all rights, estates, and interest hereby created or

---

1. The form of subdivision trust agreement refers to both first and second beneficiaries in the plural whereas they are referred to in the singular throughout the opinion.

then existing in favor of the Second Beneficiaries or anyone who claims under them in and to all unreleased lots, shall utterly cease, terminate, and become null and void and all equitable and legal interest and estates in all unreleased lots and in improvements on any unreleased lot and all other appurtenances together with all sums of money theretofore paid by the Second Beneficiaries hereunder shall revert to, be vested in and become the sole property of the Trustee for the benefit of the First Beneficiaries, and the Second Beneficiaries shall have no right either at law or in equity to reclaim or recover any compensation for moneys paid, services performed, or improvements placed upon any unreleased lot, and the money paid and the improvements erected on any unreleased lot shall be forfeited to and retained by and become the sole property of the Trustee for the benefit of the First Beneficiaries as liquidated damages for such default and not as a penalty and also as consideration for the execution of this agreement. The Trustee shall have the right 30 days after the declaration of forfeiture in the manner herein provided to enter upon said premises and to take exclusive possession thereof with or without process of law. Provided, however, that no forfeiture hereunder shall be enforced until and after the expiration, after such default of the periods provided in Section 33–741 and Section 33–742 Arizona Revised Statutes 1956.

It is provided that in calculating the percentages provided in Section 33–741 and Section 33–742 Arizona Revised Statutes 1956, any amounts paid for the release of lots in excess of the prorata amount for each lot, necessary to pay the obligation in full, shall be considered as equity to the purchaser.

In the event of forfeiture of the right of Second Beneficiaries the Trustee shall upon written demand of First Beneficiaries and after payment to it of all the costs, fees, expenses and advances of the Trustee, deed the trust property or any part thereof to the First Beneficiaries or

their nominee or shall otherwise handle, manage or dispose of said property as it may be directed by First Beneficiaries.

It is clear that "forfeiture and cancellation" may be accomplished by either serving a written declaration of forfeiture upon the second beneficiary or by mailing it to him at his address. Freedman argues, however, that this provision relates to the declaration of forfeiture but is silent as to the notice of default and insistence of strict compliance. He contends therefore that under the rule to which both sides agree, he was entitled to actual receipt of the notice of default and insistence of strict compliance.

■ We are unable to agree with this interpretation of Paragraph VIII. Interpreting the paragraph as a whole and giving it reasonable meaning, we hold that the provision as to mailing also applies to the steps leading to forfeiture, which includes the notice of default and notice of strict compliance. A contrary reading makes little sense. It would be absurd to require actual receipt of the notice of default and notice of strict compliance but not of the notice of forfeiture. Because the notice of default and notice of strict compliance is an essential part of the forfeiture procedure, it is subsumed within the general term "forfeiture" used in Paragraph VIII as it relates to the notice.

Notwithstanding his acknowledgment of the rule that the parties may agree to other than actual notice, Freedman contends that a close reading of *Arizona Title Guarantee & Trust Co. v. Modern Homes, Inc., supra, Kammert Brothers Enterprises, Inc. v. Tanque Verde Plaza Company*, 102 Ariz. 301, 428 P.2d 678 (1967), and *Jahnke v. Palomar Financial Corporation, supra*, indicates that actual notice is nevertheless required for forfeiture to occur. We reject this as incorrect. These cases did not involve the issue of what kind of notice must be given. Any reference to "receipt" of notice in those cases occurs in a different context and is not instructive here.

■ We turn next to the question of whether the court may invoke its equitable

power to relieve a party from a contractually based forfeiture. Freedman first reminds this court of the maxim that equity abhors a forfeiture. *Glad Tidings Church of America v. Hinkley*, 71 Ariz. 306, 226 P.2d 1016 (1951), *Covington v. Basich Bros. Construction Co.*, 72 Ariz. 280, 233 P.2d 837 (1951). We agree, but find the maxim is not helpful here because it assumes, in a given situation, that equitable power may intercede. In the present situation, the parties have entered into a written agreement for the sale of land and have provided that in the event of default the *exclusive* remedy of the first beneficiary is forfeiture of the interest of the second beneficiary. They have provided further that the second beneficiary shall not be personally liable for payment of the purchase price. Moreover, the remedy of forfeiture and cancellation is limited by A.R.S. § 33–741 which provides that the forfeiture can be enforced only after the allowance of a "grace" period which is dependent upon the amount of money paid by the purchaser.

■ When and to what extent a court may refuse to enforce a forfeiture on equitable grounds is not susceptible to a categorical rule and we have been directed to none by the parties. As a sound general proposition, equity follows the law and a court will enforce a valid contract according to its terms, even though enforcement may be harsh or result in a forfeiture. *Goodman v. Newzona Investment Co.*, 101 Ariz. 470, 421 P.2d 318 (1966). This concept is bolstered in the present situation where the agreed-to remedy of forfeiture is specifically sanctioned by A.R.S. § 33–741. *See Valley Drive-In Theatre Corporation v. Superior Court*, 79 Ariz. 396, 291 P.2d 213 (1955); *Cloeter v. Superior Court*, 86 Ariz. 400, 347 P.2d 33 (1959), and *Sult v. O'Brien*, 15 Ariz. App. 384, 488 P.2d 1021 (1971). In fact, the statute has ameliorated the harshness of forfeiture by mandating a grace period, thus to some extent building an equity into the written contract itself.

The difficulty with equitable intervention in the present case is that it undoes a legally recognized remedy which the parties have agreed to. In providing for the remedy of forfeiture, notice by mail was a risk inserted into the contract and presumably weighed by the parties in the process. The parties know as much about the reliability of the mails as does the court. If the court views the mail as too unreliable to premise legal rights and obligations upon it, the effect would be to disturb profoundly hundreds of arrangements people make with one another and to render uncertain the many remedies, not just forfeiture, upon which contracts are hinged. Forfeiture is not the only remedy which brings with it a harsh result.

■ We conclude that the trial court incorrectly exercised its discretion to avert forfeiture and cancellation in this case and therefore reverse the summary judgment. In a similar situation, Division Two of this court has reached the same conclusion. *Hale v. Flores*, 19 Ariz.App. 236, 506 P.2d 276 (1973). We are referred by Freedman to several decisions from other jurisdictions which, for varying reasons, we do not find persuasive: *Mosso v. Lee*, 53 Nev. 176, 295 P. 776 (1931); *Slobe v. Kirby Stone, Inc.*, 84 Nev. 700, 447 P.2d 491 (1968); *Bedell v. Barber*, 80 Cal.App.2d 806, 182 P.2d 591 (1947).

Finally, we do not reach any issue which would require a " balancing of the equities" in this case, although several are presented. Suffice it to say, however, that on the facts presented we are not impressed that the equities necessarily gravitate to Freedman instead of appellants.

### APPELLANTS' CROSS–MOTION FOR SUMMARY JUDGMENT

■ Appellants raise as a cross-issue the denial by the trial court of their motion for summary judgment. The basis for their motion is that Freedman defaulted in payment due under the subdivision trust; that appellants have strictly complied with the requirements for notice of default and notice of strict compliance, as well as notice of forfeiture; that the statutory grace period provided by A.R.S. § 33–741 expired without payment by Freedman, and that the

**546**

interest of Freedman in the subdivision trust has been lawfully forfeited and cancelled. They point out that there is no genuine issue of fact raised concerning the correctness of these procedures, including the fact that all notices were properly mailed. They argue that, as a consequence of a ruling favorable to them on the issues discussed earlier, they are entitled to an order granting their motion for summary judgment. We agree. There is no genuine issue of material fact and appellants are entitled, as a matter of law, to an order granting their motion for summary judgment. *See Hille v. Safeco Insurance Company of America*, 25 Ariz.App. 353, 543 P.2d 474 (1975).

## CROSS–APPEAL OF FREEDMAN AND GUCKENBERGER

Cross-Appellants raise as issues on cross-appeal that the trial court erred in refusing to award them costs and attorney fees. As we have reversed the judgment in their favor, the issue is now moot.

## SEPARATE ISSUES RAISED BY APPELLANT CONTINENTAL SERVICE CORPORATION

Suit was brought by Stewart S. Freedman and George Guckenberger, III. Continental argues that the undisputed evidence shows that Freedman is the only person appearing in their records as having an interest in the subdivision trust agreement. It argues that Guckenberger is not a proper party plaintiff, did not state a claim for relief against Continental, and was not entitled to a judgment against Continental. Guckenberger's response is that, while the property was purchased under the name of Freedman and kept in that name "for ease of administration," it in fact was purchased for and held by a partnership under the name of F & G Realty Investment Company, which was composed of both Freedman and Guckenberger.

Since we have reversed the judgment in favor of Freedman and Guckenberger and ordered judgment in favor of appellants, this issue is now moot and does not require a ruling.

Continental also raises an issue as to whether Freedman was entitled to judgment against Continental Service Corporation in view of the fact that the trust was terminated in accordance with its terms and record title to the trust property was transferred to First National Bank before the complaint was filed. This issue is also moot for the reason mentioned earlier.

It is ordered reversing the judgment and directing that judgment be entered in favor of appellants in accordance with the foregoing opinion.

WREN and DONOFRIO, JJ., concur.