In re Alex O. MANCHA and Vera Mancha, Debtors.

Harry C. WILDA and Joan D. Wilda, husband and wife, Plaintiffs,

v.

Alex O. MANCHA and Vera Mancha, Defendants.

Bankruptcy No. B–81–2476 PCT–VM. Adv. No. 81–891 VM.

United States Bankruptcy Court, D. Arizona.

June 8, 1982.

H. J. Wolfinger, Prescott, Ariz., for plaintiff.

William B. Fortner, Prescott, Ariz., for defendant.

## MEMORANDUM DECISION

VINCENT D. MAGGIORE, Bankruptcy Judge.

This case arose on a complaint to lift a stay. The Plaintiffs, Harry and Joan Wilda, filed this complaint pursuant to Section 362(d) of the Bankruptcy Code (11 U.S.C. § 362(d)). The plaintiffs contend that because the debtors failed to keep payments current and failed to redeem the homestead property within the statutory time limit, the debtors lose their property interests in an ejectment and forfeiture action. Such an action was pending in state court when the bankruptcy petition was filed. The Plaintiff requested this court to lift the stay in order to proceed with that action. This court denied the lifting of the stay, but retained jurisdiction to hear the forfeiture action. Thus, this court acted as the state court in this action to quiet title.

The matter was tried and the following facts were ascertained. On or about July 16, 1970, Harry and Joan Wilda (Plaintiffs) entered into an agreement to sell to Alex and Vera Mancha (Defendants/Debtors) a house. The purchase price was $6,500.00 payable $500.00 down with the remainder payable in $50.00 a month installments at 8% interest. The parties executed escrow instructions with Yavapai Title Company. These instructions set forth the address of the defendants as 429½ Lincoln Avenue where they were currently residing, and not 435 Lincoln Avenue, the address of the property in question into which the debtors moved. The payment record shows a pattern of irregular payments during its ten year history. Payments were made periodically and often times represented a combination of several months payments. The facts indicated that the Manchas were not financially affluent but very sincere. Finally, on October 30, 1979, Yavapai Title Company mailed to the Debtors notice requiring strict performance of the agreement and informing them that payments from June 1, 1979, to October 1, 1979, had not been paid ($281.25). Yavapai mailed this notice to the address listed on the escrow. Since the address on the escrow was not the address of the residence of the debtors, the debtors never received the notice. On July 22, 1980, Yavapai Title mailed to the Debtors a Notice of Election and Declaration of Forfeiture, pursuant to the terms of the escrow. Again, this notice was mailed to the address on the escrow instructions and never received by the Debtors. The notices were sent by registered mail, not claimed by the Debtors, and were returned to the title company.

On August 5, 1980, the title company recorded the quit claim deed which it was holding from the debtors to the plaintiffs again pursuant to the escrow agreement. The Plaintiffs now want enforcement of the forfeiture action. They allege that the debtors should vacate the property because title now lies with them since the title company transferred the title back to them.

The law on forfeiture provisions is well settled in Arizona. When the seller has waived strict performance of a provision concerning installment payments, he cannot forfeit for subsequent failure to pay until the buyer is notified of the seller's intention to insist upon strict performance and given a *reasonable* opportunity to bring payments to date. *Jahnke v. Palomar Financial Corporation*, 22 Ariz.App. 369, 527 P.2d 771 (1974). The Mancha's allege they

didn't receive notice and thus were not allowed a reasonable opportunity to bring payments to date.

The issue before this court is whether the statutory and contractual procedure followed by the Wildas is sufficient to allow them to prevail on the forfeiture action.

■ The basic rule is, with regard to notice, that where notice is involved, actual notice is required, except where otherwise provided by contract or statute. *Goodman v. Jones*, 102 Ariz. 532, 433 P.2d 980 (1967). The Plaintiff cites to *Freedman v. Continental Service Corporation*, 127 Ariz. 540, 622 P.2d 487 (1980) for the proposition that notice does not have to be actual, if the mailing of the notice was in compliance with the terms of the agreement. They also refer to this case for the proposition that equity will enforce a valid contract according to its terms.

■ This court agrees with the holding and rationale in *Freedman*. However, the court in *Freedman* also recognizes that "when and to what extent a court may refuse to enforce a forfeiture on equitable grounds is not susceptible to a categorical rule." That is, each case must be examined individually and if the facts are such that it would be a miscarriage of justice to follow the technicalities of the law, then equity must prevail. There exists in the present case equitable grounds wholly lacking in *Freedman*. The evidence at trial indicated that the plaintiffs probably knew or at least should have known that the debtors did not receive most of the mailings sent by the title company. The evidence presented indicated that the title company accepts change of addresses orally and that the debtors, by telephone, notified them of their change of address. Possessing this information, the plaintiffs are precluded from using the technical requirements of their contract and the technical requirements of the statute to gain lawful possession of the debtors' residence. The Arizona Forfeiture Statute is reasonably calculated to inform the interested parties of proceedings and to afford them meaningful opportunity to contest it. *In the Matter of 1974 Chevrolet Camaro Auto,* 121 Ariz. 232, 589 P.2d 475 (1978). In the present situation, the plaintiffs knew or should have known that merely following the procedure as set forth in their contract would not reasonably deliver notice to the debtors. Reasonable efforts were not made to give Debtors notice of the prospective forfeiture of their home.

Upon receiving actual notice, the debtors arranged for tender of the liquidated balance of the debt. The plaintiffs', however, refused to accept this tender. The debt is approximately $4,500.00 on a family residence worth up to $25,000.00. This court cannot allow a forfeiture to be effective with such notice and in light of the secured parties refusal of tender of the liquidated balance.

An order consistent with these findings shall be entered.

The foregoing shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 752.