In re Alex O. MANCHA and Vera Mancha, Debtors.

Harry C. WILDA and Joan D. Wilda, Plaintiffs,

v.

Alex O. MANCHA and Vera Mancha, Defendants.

BAP No. AZ–82–1263–AsEAb
Bankruptcy No. B–81–2476 PCT–VM.
Adv. No. 81–891 VM.

United States Bankruptcy Appellate Panels for the Ninth Circuit.

Argued May 18, 1983.

Decided Dec. 16, 1983.

Harold J. Wolfinger, Wolfinger & Lutey, Prescott, Ariz., for Harry and Joan Wilda.

William B. Fortner, Prescott, Ariz., for Alex and Vera Mancha.

Before: ASHLAND, ELLIOTT and ABRAHAMS, Bankruptcy Judges.

## OPINION

ASHLAND, Bankruptcy Judge:

INTRODUCTION

Harry C. and Joan D. Wilda appeal from a judgment of the bankruptcy court setting aside the forfeiture of debtors' home. *In re Mancha,* 21 B.R. 497 (Bkrtcy.Ariz.1982).

On June 15, 1970 the Wildas as sellers and the Manchas as buyers executed escrow instructions with Yavapai Title Company for the sale of a residence at 435 Lincoln Avenue, Prescott, Arizona. The escrow instructions listed the address of the Manchas as 429½ Lincoln Avenue, Prescott, Arizona, their then current address. On July 16, 1970 a contract for conveyance of real property was signed by the parties and the Manchas took possession of the home.

During the next ten years the Manchas frequently fell behind in their monthly payments under the contract. When payments were made, they were often for a number of months.

The escrow instructions provided that in the event of a default by the buyer, the seller could elect to bring an action for specific performance or enforce a forfeiture against the buyer upon notice as provided in the instructions. If the seller elected to enforce a forfeiture, a written Declaration of Forfeiture was required to be delivered to the account servicing agent which in turn was to serve it upon the buyer.

With regard to notice, the instructions provided:

31. The respective addresses of Seller and Buyer are set forth herein or the last notice of change thereof filed with Escrow Agent by the respective parties, shall be used by Escrow Agent in mailing any Notice, Demand or Declaration to either party.

32. ... Escrow Agent shall within three days after receipt of said Notice, Demand or Declaration, send it to the party to whom it is directed by enclosing a copy of said instrument in an envelope addressed to said party at the last address which said party shall have filed with Escrow Agent, or, if no address has been so filed, to said party at Prescott, Arizona, and depositing said envelope with proper postage affixed thereto in the United States mail.

33. The mailing of any such instrument by Escrow Agent in the manner herein provided shall constitute notice of the contents of such instrument to the party to whom the instrument is directed as of the date of such mailing and no further notice thereof shall be required.

On October 30, 1979 the escrow company mailed to the Manchas a notice requiring strict performance of the agreement and stating that payments had not been made for five months. The notice was sent by certified mail to the Manchas at 429½ Lincoln Avenue, their old address. The letter was returned to the escrow company by the Postal Service after notices of the delivery of a certified letter were left at 429½ Lincoln Avenue.

On July 22, 1980 the escrow company mailed a Notice of Election and Declaration of Forfeiture to the Manchas, again at the 429½ Lincoln Avenue address. It too was sent via certified mail and was returned after notices were left at 429½ Lincoln Avenue informing the occupants that a certified letter awaited them at the post office.

On August 5, 1980 the escrow company recorded a quit-claim deed, pursuant to the original agreement, vesting the property in the Wildas. Shortly after that date, the July 22, 1980 certified letter arrived back at the escrow company's offices.

The Manchas did not receive actual notice of the recording of the quit-claim deed and the forfeiture action until Mr. Wilda telephoned Mrs. Mancha some time after August 5, 1980.

On November 5, 1980 the Manchas attempted to tender to the Wildas the sum of $4,400 as the liquidated balance of the debt. The Wildas rejected the tender.

At trial, testimony indicated that the Manchas never received either the October 30, 1979 notice or the July 22, 1980 declaration. Testimony also indicated that Mrs. Mancha informed the escrow company of the change of her address long before the notice requiring strict performance was mailed.

Notwithstanding the fact that Arizona law allows notice of a seller's election to forfeit buyer's property by mail to be effective upon dispatch, if so provided in an agreement, the bankruptcy court set aside the forfeiture on equitable grounds.

The court noted:

(1) The Wildas' knew or should have known that the Manchas did not receive most of the mailings sent by the escrow company.

(2) Debtors notified the escrow company of their change of address.

(3) Reasonable efforts were not made to give debtors notice of the prospective forfeiture of their home.

(4) Debtors attempted to tender the liquidated balance after receiving actual notice of the forfeiture.

(5) The debt is approximately $4,500 on a family residence worth up to $25,000.

The Wildas appeal from the bankruptcy court decision.

## ANALYSIS

■ Arizona law requires actual notice except where otherwise provided by contract or statute. *Goodman v. Jones,* 102 Ariz. 532, 433 P.2d 980 (1967). Here, the escrow instructions provided for effective notice upon deposit into the United States mail. The problem is the notice was not properly addressed. Hence, debtors never received notice and lost their home.

■ We hold that notice in this case was deficient and affirm the decision of the bankruptcy court.

The Wildas cite *Freedman v. Continental Service Corp.,* 127 Ariz. 540, 622 P.2d 487 (1980), for the proposition that mailing, and not receipt, constitutes proper notice to the buyer if such notice is provided for in the agreement between the parties, and that such agreements will be strictly enforced. Therefore, the Wildas argue, the forfeiture should not have been set aside and the fact that the Manchas never received actual notice of the impending forfeiture is irrelevant since the contractual provisions control and were satisfied.

We find nothing in *Freedman* to prevent the bankruptcy court from setting aside the forfeiture in this case. *Freedman* says contractual provisions regarding notice control and will be strictly applied. However, *Freedman* is not etched in stone; it allows some flexibility when equity so dictates. "When and to what extent a court may refuse to enforce a forfeiture on equitable grounds is not susceptible to a categorical rule ..." Id. at 545, 622 P.2d at 492.

In *Freedman* notice was correctly mailed. The debtor averred that he did not receive notice of default, but acknowledged receipt of the notice of forfeiture. He argued that he must have actually received the former notice in order for the forfeiture to have been proper.

■ The conclusion of the bankruptcy court was proper. Equity in this instance dictates that the Manchas should not lose their home. Evidence at trial indicated that Mrs. Mancha provided the escrow company with a change of address. Her testimony on this point was uncontroverted. Also, the escrow company, and through it the Wildas, were on notice that the Manchas were not receiving notice via certified mail since the first notice was returned by

the Postal Service. Additionally, the Manchas attempted to tender the liquidated balance of their debt upon actual notice of the forfeiture. Their efforts were rebuffed. A buyer under a conditional sales contract who desires to resist a forfeiture declared by the seller must exhibit that he is ready, willing and able to perform his duties under the contract. *See, Phoenix Title & Trust Co. v. Horwath,* 41 Ariz. 417, 19 P.2d 82 (1933).

As a result of the refusal to accept the tender of the balance due on the contract, the Manchas lost a house valued at $25,000.

The judgment of the bankruptcy court is affirmed.