746 P.2d 18

Thomas L. HOYLE and Jane A. Hoyle, husband and wife, Plaintiffs/Appellees,

v.

R.G. DICKINSON and Sally Dickinson, husband and wife, Defendants/Appellants.

No. 2 CA–CV 87–0175.

Court of Appeals of Arizona, Division 2, Department B.

Aug. 11, 1987.

Dain K. Calvin, Phoenix, for plaintiffs/appellees.

Ayers & Graham, P.C. by Charles K. Ayers and Joseph M. Hillegas, Jr., Phoenix, for defendants/appellants.

## OPINION

FERNANDEZ, Judge.

In this case we are presented with the question of whether, under a subdivision trust in Arizona, a first beneficiary who has subordinated his priority to a construction lender can sue a second beneficiary for the unpaid balance of the purchase price after the trust property has been foreclosed upon by the lender. We hold that such an action may be maintained and that the summary judgment entered in favor of the first beneficiary in this case was proper.

In June 1980 plaintiffs/appellees Thomas and Jane Hoyle and Marinco Builders, Ltd. executed escrow instructions in which the Hoyles agreed to convey their real property in Phoenix to Marinco. In July 1980, a joint venture agreement was entered into between Marinco, J.D. Kent and R.G. Dickinson, defendant/appellant. The agreement stated that Kent owned or was acquiring real property (the subject property) on which at least 18 condominiums could be built by Marinco, stated to be an experienced builder. The agreement provided that Dickinson would pay $100,000 in exchange for a 50 per cent interest in the net profit of the development project. Kent agreed to hold Dickinson harmless from any loss of the principal of his investment. The agreement provided for the parties to jointly develop the property and to encumber it in order to obtain necessary financing for the development.

Shortly after the joint venture agreement was executed, Hoyle and Marinco executed the subdivision trust agreement which is in issue here. Under it, the Hoyles are first beneficiaries and Marinco is second beneficiary. The trustee, Pioneer Trust Company of Arizona, executed the trust in November 1980. Thereafter, the joint venture applied for an interim construction loan from Great Western Bank & Trust, and in March 1982, the Hoyles subordinated their first beneficiary interest in the trust in favor of the bank's trust deed and a loan was obtained.

In July 1982, Marinco executed an assignment of beneficial interest in which it assigned its rights as second beneficiary of the subdivision trust to Marinco, Kent and Dickinson, doing business as Osborn Gardens Condominium Developments, the name employed by the joint venture. Dickinson and the others executed an acceptance of the assignment, which reads as follows:

The foregoing Assignment of Beneficial Interest is hereby accepted and all the terms and conditions are hereby approved and the Assignee hereby acknowledges receipt of a copy of said Trust Agreement and all Amendments and Supplements thereto, and has read same and agrees to be bound by and to comply with all the obligations of said Trust No. 20,441.

After the joint venture was unable to make the monthly payments of $2,500 plus interest to the Hoyles under the trust, the Hoyles issued a notice of forfeiture in October 1982 in accordance with A.R.S. § 33–742, as required by the trust provisions. The notice gave them nine months in which to cure the default.

During the cure period, in March 1983, Dickinson obtained a promissory note for $100,000 from Kent and the owners of Marinco. After default on that note, Dickinson sued the promissors. That lawsuit was settled out of court.

In May 1983, the Hoyles withdrew their notice of forfeiture and agreed to a revised statement with regard to the priority of payments. The joint venturers agreed that they would receive no funds under the agreement until the Hoyles were paid in full.

In April 1984, Great Western Bank foreclosed on the property by means of a trustee's sale. The bank bid the full amount of the remaining balance on its loan and obtained the property. The Hoyles made no attempt to cure any default on the construction loan.

In August 1984, the trustee, acting on instructions from the Hoyles, notified the second beneficiaries of their breach and reinstated the time is of the essence clause

of the subdivision trust agreement. The joint venture was unable to perform, and the Hoyles then filed this lawsuit. The trial court granted their motion for summary judgment in July 1986 and entered judgment against the Dickinsons [1] for $78,000, the amount of the unpaid balance due under the subdivision trust. This appeal followed.

■ The trust at issue here is a typical subdivision trust in which a developer agrees to buy real property without paying a great deal of cash for it, and the seller agrees to be paid with proceeds from the sale of subdivided parcels after the property is developed. G. Carlock, *The Subdivision Trust—A Useful Device in Real Estate Transactions*, 5 Ariz.L.Rev. 1 (1963). In a subdivision trust agreement,

> the seller of land, referred to as the 'first beneficiary,' transfers title to a trustee under provisions of a trust. Upon payment of specified amounts, the buyer of the land, referred to as the 'second beneficiary,' is entitled to have designated portions of the land released and conveyed at various times. Usually a subdivision trust is entered into for the purpose of allowing the buyer to obtain ownership of portions of land over a period of time in order to develop it for resale.

*Freedman v. Continental Service Corp.*, 127 Ariz. 540, 541, 622 P.2d 487, 488 (App. 1980). So long as the buyer is not in default under the trust, he has the right to possession of the property and to take whatever actions are necessary to develop it.

On appeal, Dickinson contends that the agreement was a contract for conveyance rather than a trust and that the trust terminated when the res was foreclosed upon by the bank so that the Hoyles are precluded from suing for any unpaid balance under the agreement.

## TRUST AGREEMENT OR CONTRACT FOR CONVEYANCE?

The Arizona Supreme Court in *Lane Title & Trust Co. v. Brannan*, 103 Ariz. 272,

440 P.2d 105 (1968), in reviewing a subdivision trust agreement held that, in Arizona, a subdivision trust is to be treated as a common law trust and is to be governed either by the provisions of the agreement creating it or by general trust law.

■ "The beneficiary of a trust who is a party to the contract giving rise to [that] trust may recover damages for its breach." 76 Am.Jur.2d *Trusts* § 584, p. 792 (1975). A trust beneficiary may also bring an action for damages against a trustee or a third person. 76 Am.Jur.2d *Trusts* § 578 (1975). Here, there was a breach of the trust agreement when Dickinson and the other joint venturers failed to pay the $2,500 monthly payments to the Hoyles. The joint venturers also stopped paying the construction lender on their obligations on the property. The Hoyles had a contractual obligation under the trust agreement to subordinate their interest so that the property could be developed by the joint venturers. After the trustee's sale concluded, all interests in the property were lost as a result of the joint venturers' failure to make payments to the bank.

Under Section XIX of the trust agreement, the Hoyles had the right to elect either to seek the sums due under the agreement by any available remedy at law or in equity or to forfeit the joint venturers' interest in the property and regain possession of it. That section defines the procedure for the Hoyles to follow in the event of a breach. The record shows that procedure was followed here.

■ Dickinson contends that the subdivision trust agreement is in reality a land sales contract. We disagree. The essential elements of a trust are: "(a) a competent settlor and a trustee; (b) a clear and unequivocal intent to create a trust; (c) an ascertainable trust res; and (d) sufficiently identifiable beneficiaries." *Lane Title & Trust Co.*, supra, 103 Ariz. at 276–277, 440

---

1. Kent died sometime prior to the filing of this lawsuit, and a default judgment was entered against Marinco.

P.2d at 109–110; *Doss v. Kalas,* 94 Ariz. 247, 252, 383 P.2d 169, 173 (1963). It is apparent from the trust agreement here that there was a settlor and trustee, a clear and unequivocal intent to create a trust as indicated in that document and an identified trust res as well as specified beneficiaries. In a land contract, legal title to the property is not conveyed but remains in the vendor. *Wayt v. Wayt,* 123 Ariz. 444, 600 P.2d 748 (1979). After payment in full of the sums due under the contract, the purchaser then receives legal title to the property. A.R.S. § 33–741(2); cf. *Tucker v. Byler,* 27 Ariz.App. 704, 558 P.2d 732 (App. 1976). In the agreement here, however, the Hoyles transferred legal title to the trustee and did not retain any interest in the property. In addition, under the agreement, the joint venturers never contemplated holding legal title to the property. Instead, it was contemplated that portions of the property would be conveyed to third parties who purchased the completed condominiums. The elements of a contract for conveyance were not present in the agreement, and the subdivision trust agreement clearly established a trust.

Dickinson also contends that *Freedman v. Continental Service Corp.,* supra, supports his argument that a subdivision trust is a land sales contract. We disagree. That case involved the pursuit of a forfeiture remedy which was the sole remedy available to the first beneficiary there. Under the agreement in that case, forfeiture was to be carried out under the statutes governing forfeiture of land contracts. Forfeiture is not an issue in this case. Here, there was no realty available for forfeiture because of the failure of the joint venturers to make payments. The property involved was lost forever, and this action sought collection of the debt, not forfeiture.

## DID THE LOSS OF THE PROPERTY TERMINATE THE OBLIGATION?

Dickinson argues that the bank's foreclosure on the realty resulted in the loss of the trust res, which effectively extinguished his obligation under the trust agreement. This argument assumes that the only trust res was the bare legal title to the realty. However, the trust estate described in Section I of the trust agreement, in addition to the legal title to the property, includes "all funds received by Trustee as performance of the obligations of the Beneficiaries created by this Trust Agreement."

A trust res can consist of any type of transferable property, including realty, personalty and future, undivided or contingent interests. 76 Am.Jur.2d *Trusts* § 33 (1975). A contingent interest can be held in trust, as can an expectancy based upon an existing contract. *Bank of California v. Connolly,* 36 Cal.App.3d 350, 111 Cal.Rptr. 468 (1973); Restatement (Second) of Trusts §§ 85, 86 comment e (1957). The bare legal title to the realty was not the only trust res here. The res also consisted of all sums due under the agreement. Therefore, the Hoyles were entitled to sue for collection of those sums. We hold that the bank's foreclosure did not result in the termination of Dickinson's obligations under the trust agreement.

We find no merit to Dickinson's contention that the Hoyles had a duty to appear at the trustee's sale and to buy the property in order to be able to maintain this action. Since that sale was caused by the joint venturers' breach, we find that the Hoyles had no duty to take such action.

We also find no merit to Dickinson's contention that since he only loaned money to the joint venture and was not a participant in it, he should not be liable under the trust agreement. The evidence clearly shows that Dickinson accepted assignment of the beneficial interest in the trust and promised to perform all required obligations under it.

Affirmed.

LIVERMORE, P.J., and ROLL, J., concur.