527 P.2d 771

**Curtis R. JAHNKE, Appellant,**

v.

**PALOMAR FINANCIAL CORPORATION,**
a California corporation, Appellee.

**No. I CA–CIV 2470.**

Court of Appeals of Arizona,
Division 1,
Department C.

Oct. 29, 1974.

Rehearing Denied Nov. 25, 1974.

Review Denied Jan. 21, 1975.

Warner & Angle by Edward L. Roper, Phoenix, for appellant.

Perry & Head by David A. Griffiths, Phoenix, for appellee.

## OPINION.

FROEB, Judge.

Palomar Financial Corporation (Palomar) was the seller under a contract for the sale of the Flamingo Motor Hotel in the City of Yuma. This suit was commenced by Palomar against the original and successive purchasers of the property whose interests arose under and flow from the contract document referred to as the "Master Contract." In addition to these defendants, Curtis R. Jahnke (Jahnke) was also named as a defendant in view of his interest as the owner and holder of a note secured by a deed of trust from one of the purchasers in the chain of title. The purpose of the suit was to enforce a forfeiture by Palomar of all of the interests of the defendants and to quiet title in its name.

The interests of the various parties came about as follows. On October 7, 1971, Palomar, then owner of the Flamingo Motor Hotel, sold its interest to the E. L. Suttons, who, thereafter, on January 14, 1972, sold their interest to Henry Van Merryman, who, in turn, sold his interest on March 22, 1972, to Tahitian Village, a partnership. Tahitian Village assumed the buyers' obligations under the Master Contract, as did the previous purchasers, and, in addition, gave its note in the amount of $125,000.00 secured by a deed of trust to Merryman. Merryman then assigned all of his interest in the note and deed of trust to Jahnke. The assignment was recorded on May 1, 1972.

Upon the filing of this action and service of the complaint, each of the named parties except Jahnke failed to appear and their defaults were entered. Jahnke did appear and defend by filing a timely answer.

Payments had been made from March 1, 1972, through July 25, 1972. None of the payments were made in accordance with the payment schedule, with delays varying from 20 days to six weeks. The last installment received by Palomar was the June 1, 1972, payment which was made on July 25, 1972. Less than twenty percent of the total purchase price had been paid when these proceedings began.

The failure of Tahitian Village, or for that matter any other interested party, to make payments due under the Master Contract led Palomar to undertake legal steps to enforce the right of forfeiture provided for therein. There is no dispute that Palo-

mar had accepted late payments and had failed to insist upon compliance with the "time of the essence" clause of the contract. Recognizing this, Palomar, through its attorneys, prepared and attempted to serve upon all parties having an interest in the Flamingo Motor Hotel a "notice requiring strict performance"[1] dated November 10, 1972. Copies were mailed to each person appearing to have an interest in the hotel, including Jahnke. It is not clear, however, whether Jahnke received a copy of the notice which was mailed on November 10, 1972. He did, however, receive a copy on November 22, 1972, at the time the complaint in this case was served upon him.

Although the notice provided that the "time of the essence" clause of the Master Contract was to be reinstated on and after thirty days from the date of the notice, it is not clear from the wording of the notice whether the purchasers would be in default on December 11, 1972, or on January 1, 1973, the next regular due date for payment of an installment under the contract. Under one construction of the notice, all past due payments and obligations were to become immediately due and payable thirty days following the date of the notice which would be December 11, 1972, while under another construction no past due payments or obligations were to become due and payable until the next regular installment date which was January 1, 1973. As appears, however, from our decision and holding in this case, we need not decide which interpretation of the notice requiring strict performance is to be applied.

The facts which are determinative of this lawsuit then follow. Having sent forth its thirty day insistence notice dated *November 10th,* Palomar then filed its complaint in the Superior Court on *November 20, 1972.* In two separate counts, it sought to enforce a forfeiture of the interest of all parties named above in the Flamingo Motor Hotel and to quiet title to itself. A copy of the complaint together with a copy of the insistence notice was served upon Jahnke on November 22, 1972, which, for the purpose of this case, is considered to be the date upon which Jahnke received notice of Palomar's demand for strict compliance with the obligations of the purchaser under the contract. In his answer filed on December 28, 1972, Jahnke entered a general denial, and, in addition,

---

1. Notice Requiring Strict Performance of Master Contract for Sale of Real Estate and Other Property.

To: Ernest L. Sutton and Alberta Sutton, husband and wife, Henry Van Merryman, a single man, Tahitian Village, a general partnership, Gene Morgan, Albert W. Seeburger, Haines Nixon, Lee Howard, Curtis R. Jahnke and Transamerica Title Insurance Company.

You and each of you are hereby notified that Palomar Financial, a California corporation, as the "Seller" in that certain agreement dated October 7, 1971, and recorded in the office of the County Recorder of Yuma County, Arizona, in Docket 689 at page 405 thereof, wherein Ernest L. Sutton and Alberta Sutton, husband and wife, are designated as "Buyer," and which agreement is designated "Master Contract for Sale of Real Estate and Other Property" and is for sale and purchase of the following described real property situate in the County of Yuma, State of Arizona, to-wit:

The North ½ of the Northwest ¼ of Lot 2, Section 4, Township 9 South, Range 23 West of the Gila and Salt River Base and Meridian, lying within the corporate limits of the City of Yuma, together with the personal property and other rights therein set forth.

will not, on or after the date of this Notice, accept any payment under the terms of said agreement, unless said payments constitute payment in full of all sums due thereunder as of the date said payments are made; and the undersigned insist that on and after 30 days from the date of this notice, the provision contained in said agreement, whereby time is made the essence of said agreement, be reinstated and considered a part thereof, and all the Buyers obligations thereunder will thereafter be required to be performed strictly and at the exact time provided for in said agreement.

Palomar Financial
by Perry & Head, its
Arizona counsel
(Signed by Allan R. Perry)
Dated: November 10, 1972.

alleged that the complaint failed to state a claim for relief against him. He further alleged that the defendant purchasers were not in default of their obligations under the contract and that the time of the essence clause had been waived by Palomar in accepting late payments from the various purchasers under the contract. In addition, Jahnke alleged that the claims of Palomar were premature and that the court lacked jurisdiction over the subject matter.

Jahnke contends that Palomar waived its right to rely upon the time of the essence clause of the Master Contract by accepting late payments; that the complaint in the action was prematurely filed insofar as the time of the essence clause had not been reinstated when the complaint was filed; that no default had then occurred entitling Palomar to forfeiture; that no declaration of election to forfeit was ever made by Palomar after default, and that the judgment constitutes a taking of his property without due process of law.

Palomar argues that Jahnke has no standing as a mere subsequent lienholder to raise the defense of waiver or to insist upon a declaration of forfeiture; that the time of the essence clause was reinstated and forfeiture was completed prior to the filing of the motion for summary judgment, though subsequent to the filing of the complaint; and that, in any event, Jahnke made no tender of funds to cure the default and was required to do so upon equitable principles.

Thereafter, on February 1, 1973, Palomar filed a motion for summary judgment, followed on February 26, 1973, by Jahnke's motion for judgment on the pleadings. The trial court, on March 5, 1973, granted the motion of Palomar, denied the motion of Jahnke, and entered judgment declaring the contract forfeited and Jahnke's interest terminated. From this judgment, Jahnke appeals.

## DEFECTIVENESS OF COMPLAINT

We find that Palomar lacked the right to enforce a forfeiture of the interests of the purchasers and their assignees at the time it filed the complaint in this case.

There is no factual dispute that Palomar had previously and without objection received overdue installments. The last installment was due on June 1, 1972, and was paid on July 25, 1972. In addition, there appear to have been past due insurance premiums and taxes which Palomar paid on behalf of the purchasers, entitling it to add those amounts to accruing contract installments. While Palomar does not concede that the time of the essence condition of the contract was thereby waived, we cannot do otherwise than to treat it as such in view of the notice requiring strict performance prepared and sent out by it.

The notice stated specifically that the time of the essence provision would be considered reinstated thirty days thereafter, which at the earliest would have been December 11, 1972. Whether the buyers were in default on December 12, 1972, or whether under the notice they could not be considered in default until January 1, 1973, the due date of the next installment, is not material. The critical fact is that until at least December 12, 1972, the buyers could not be held in default as they had at least that period within which to bring their obligations up to date. Onekama Realty Co. v. Carothers, 59 Ariz. 416, 129 P.2d 918 (1942); Arizona Title Guarantee & Trust Co. v. Modern Homes, Inc., 84 Ariz. 399, 330 P.2d 113 (1958). Where prior defaults are waived, none of them can be used as a foundation for forfeiture. Arizona Title Guarantee & Trust Co. v. Modern Homes, Inc., supra. The purchaser is not in default until after it fails to comply with the required notice. Kannert Bros. Enterprises, Inc. v. Tanque Verde Plaza Co., 102 Ariz. 301, 428 P.2d 678 (1967).

We turn then to Palomar's complaint in this case, filed a mere ten days after the notice of November 10, 1972. It alleged that Palomar was owner of the property and entitled to possession and prayed for orders to this effect. However, since no default had yet occurred, under no theory

was Palomar at this point in time entitled to either ownership or possession. The complaint therefore failed to state a claim upon which relief could be granted, and since neither an amended nor supplemental complaint was ever filed, it should have been dismissed by the trial court upon Jahnke's motion for judgment on the pleadings. Rule 12(b)(6) and Rule 12(c), Rules of Civil Procedure, 16 A.R.S.

A cause of action must exist and be complete prior to the commencement of the lawsuit and if it is not it is defective as premature. Fulton v. Woodford, 17 Ariz.App. 490, 498 P.2d 564 (1972). This is true where a necessary element of the cause of action does not occur until after the commencement of the action. Investment Service Co. v. Martin Bros. Container & Timber Products Corp., 255 Or. 192, 465 P.2d 868 (1970). The rights and liabilities of the parties depend upon the facts as they existed at the time of the commencement of the action and not later at the time of filing of a motion for summary judgment.

It is worthy of note that the trial court recognized the prematurity of the complaint in its order dated December 12, 1972, wherein it denied the appointment of a receiver and stated that it was not then deciding whether the action would need to be dismissed. While technical forms of pleading are not required, nonetheless, the existence of a cause of action is a fundamental prerequisite to litigation. The consequences of defective pleading may reach over into substantive rights, as appears clearly in this case. Where questions of default, forfeiture, tender and waiver are involved, untimely pleadings set off unpredictable consequences and leave the parties in a dilemma as to what must be done to protect their rights. Thus we must hold that the complaint was fatally defective.

## STANDING OF A SUBSEQUENT LIENHOLDER TO RAISE DEFENSES TO FORFEITURE

Palomar urges that Jahnke has no standing to raise the defense of waiver of the time of the essence provision of the contract since he was neither a purchaser nor a successor in interest to a purchaser under the Master Contract. It also contends that in order for Jahnke to defend on the basis of a waiver, he must demonstrate detrimental reliance on his part. We disagree as to both of these contentions.

Jahnke's position as a creditor of Tahitian Village, under the note and the deed of trust, does not weaken his right to defend against the contract forfeiture.

The Master Contract anticipates the position of a subsequent lien creditor where it states, "all covenants and agreements herein contained shall extend to and be binding upon the heirs, administrators, executors, successors and assigns of the respective parties hereto." The interest of the purchaser, then, under the Master Contract, was transferable and assignable. Tahitian Village, the owner of the buyer's interest under the Master Contract, transferred all of its right, title and interest to the trustee under the deed of trust as security for the payment of its promissory note to Merryman, its predecessor in interest. By the terms of the deed of trust, upon the default of Tahitian Village, Merryman was entitled to assert every right belonging to Tahitian Village in order to protect his security interest. By reason of the assignment of Merryman's interest in the note and deed of trust to Jahnke, the latter acquired the right to protect his security interest by defending against a forfeiture under the Master Contract.

Thus, we hold that a subsequent lienholder under contractual dealings such as are present here, has standing to defend against the enforcement of a forfeiture brought by the seller. See e. g., Kendrick v. Davis, 75 Wash.2d 456, 452 P.2d 222 (1969).

Having determined that Jahnke has the requisite standing, we next proceed to a consideration of whether Jahnke was required to prove detrimental reliance upon Palomar's receipt of late payments as a necessary element of his waiver defense.

Palomar argues that a party relying upon the defense of waiver must show (1) relinquishment or failure to enforce the right, and (2) detrimental reliance on the part of the party asserting it. It contends that Jahnke has not shown such reliance and should therefore be denied the defense.

We hold, however, that Jahnke need not show detrimental reliance since Palomar took a position from which it is estopped to recede: namely, that by its notice of strict compliance it recognized that the time of the essence provision had been waived and gave notice to all interested parties of the reasonable period within which it would be reinstated. Palomar cannot now contend that Jahnke must have relied to his detriment on the waiver of the time of the essence provision in view of its notice that a reasonable period of time was then being extended within which to bring payments up to date. Having delivered a copy of the notice requiring strict compliance to him, Palomar was estopped thereafter to deny that Jahnke was not entitled to the same reasonable period within which to comply as was the contract purchaser.

## NOTICE OF ELECTION TO FORFEIT

■ Under the terms of the Master Contract, the seller, following a default, has two rights available to it. It may exercise its right of forfeiture or it may enforce the contract by specific performance or other appropriate remedy. See, e. g. Wilhorn Builders, Inc. v. Cortaro Management Co., 81 Ariz. 381, 307 P.2d 94 (1957). Where the choice of remedy is forfeiture, the seller has a duty set forth in the Master Contract to declare the contract forfeited and then to convey this information not only to the buyer but to assignees of which it has notice. The election and declaration cannot be made, however, until the right to enforce the forfeiture accrues. Arizona

Title Guarantee & Trust Co. v. Modern Homes, Inc., supra; Phoenix Title and Trust Co. v. Horwath, 41 Ariz. 417, 19 P.2d 82 (1933), and Kammert Bros. Enterprises, Inc. v. Tanque Verde Plaza Co., supra. The earliest date upon which default could have occurred in this case was December 12, 1972, and thus the earliest date upon which a forfeiture could have been declared and enforced was January 12, 1973.[2] Thus, from and after this date, Palomar never validly declared and elected its remedy of forfeiture. While it is true Palomar's motion for summary judgment, filed on February 1, 1973, in effect declared Palomar's intention to elect forfeiture and would have been timely in the sense that the right to forfeit had *then* accrued, the motion cannot constitute the required declaration. It is only a procedural step in the litigation and has no independent significance as a declaration of forfeiture under the Master Contract. Under the Rules of Civil Procedure it is merely a means to obtain judgment for relief sought in the pleadings. Hence, at no time was the required declaration ever made and the attempted forfeiture must fail on this ground as well. As to defects in notice, the Supreme Court, in Glad Tidings Church of America v. Hinkley, 71 Ariz. 306, 226 P.2d 1016 (1951), held:

" . . . the law does not favor forfeitures and if a party would avail himself of a contractual provision providing for such a forfeiture, he must comply strictly with all the requirements of the contract. In this case Mrs. Hinkley's notice did not so comply and therefore the notice was ineffective for that purpose." (71 Ariz. 306, 311, 226 P.2d 1016, 1020)

## NECESSITY FOR TENDER

■ The trial court, in its order dated March 6, 1973, granting Palomar's motion for summary judgment, held that the fail-

2. Under Arizona Revised Statutes, Section 33–741A(1), forfeiture of the interest of a purchaser in default under a contract for conveyance of real property may be en-

forced only after expiration of 30 days when the purchaser has paid less than twenty per cent of the purchase price.

ure of Jahnke to tender sums owing to Palomar under the Master Contract was fatal to his defense. We find under the circumstances of this case that such a tender was not required.

It is true as a general rule of equity that he who seeks equity must do equity. If a defendant in a suit to declare a contract forfeiture raises the defense that the seller by his conduct has allowed the buyer to believe that strict performance would not be insisted on, he must offer to make the overdue payment within a reasonable time. Onekama Realty Co. v. Carothers, supra. The facts of this case, however, compelled no such duty. The delinquent buyer, and through him his assignee, were offered a reasonable period (thirty days) by the notice requiring strict compliance within which to tender. After ten days had run, Palomar filed its complaint alleging that forfeiture had occurred and that it was entitled to possession. This formal act, apart from being premature as we have held, was an attempted election of remedies and equivalent to a pronouncement by Palomar that the contract was at an end; that the thirty day period provided for in the notice was abrogated, and that tender would be refused. As Palomar stated in its motion for summary judgment filed on February 1, 1973, "plaintiff's claim is for forfeiture and cancellation of a contract under the provisions of Section 33-741, Arizona Revised Statutes."

Under these circumstances it is apparent that Palomar would not have accepted a tender by Jahnke. Similarly, Jahnke could reasonably have believed such would be the case. An actual tender is unnecessary where it is apparent the other party will not accept it. Schmitt v. Sapp, 71 Ariz. 48, 223 P.2d 403 (1950); Lee v. Nichols, 81 Ariz. 106, 301 P.2d 1022 (1956); Glad Tidings Church of America v. Hinkley, supra. The law does not require one in such a position to do a vain and futile thing.

In view of our decision we need not decide other issues presented since they are not likely to reoccur in the further dealings of the parties.

We reverse the Judgment entered March 9, 1973, and direct the trial court to enter an order granting the motion of Jahnke for judgment on the pleadings dismissing the complaint without prejudice.

WREN, P. J., and NELSON, J., concur.