697 P.2d 1105

**ESPLENDIDO APARTMENTS, an Arizona limited partnership, Plaintiff-Appellee,**

v.

**John K. OLSSON and Gregory B. Maxon, Defendants-Appellants.**

**1 CA–CIV 6006.**

Court of Appeals of Arizona, Division 1, Department B.

Decided Sept. 6, 1984.

Reconsideration Denied Jan. 31, 1985.

Review Denied March 2, 1985.

*Moore v. Allcast Non-Ferrous Foundry, Inc.,* 73 N.J.Super. 139, 179 A.2d 138 (1962).

Murphy & Posner by K. Bellamy Brown, Phoenix, for plaintiff-appellee.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P.C. by Mark S. Sifferman, Herbert Mallamo, Phoenix, for defendants-appellants.

## OPINION

BROOKS, Judge.

This is an appeal from a summary judgment dismissing appellants' (hereafter referred to as buyers) counterclaim for breach of a purchase agreement with prejudice and awarding attorney's fees to appellee (hereafter referred to as seller). Seven issues are raised on appeal:

1. Whether the trial court's dismissal of seller's complaint as premature precludes seller from raising the same issues in defense of buyers' counterclaim.

2. Whether seller's premature filing of an action on the contract between the parties constitutes an anticipatory breach or a repudiation of the agreement.

3. Whether seller's alleged inability to perform under the contract entitles buyers to partial summary judgment as to liability on their counterclaim.

4. Whether there were material issues of fact which precluded summary judgment in favor of seller on buyers' counterclaim.

5. Whether the trial court committed reversible error in denying buyers' motion to amend their pleadings.

6. Whether summary judgment denied buyers their right to a trial by jury under the seventh amendment to the United States Constitution.

7. Whether the trial court erred as a matter of law in awarding attorney's fees to seller.

## FACTS

On July 17, 1979, buyers entered into a written agreement with seller to purchase two apartment complexes located in Tucson, Arizona, depositing $100,000.00 in escrow with Commonwealth Land Title Insurance Co. (Commonwealth) as an earnest

money deposit. The agreement provided, in part, as follows:

> Buyer has had a sufficient opportunity to inspect the Property, has, as of the date this Escrow is opened, conducted all surveys and inspections, including termite inspections, it deemed appropriate and necessary and finds the Property to be in a satisfactory condition, and acknowledges and agrees to accept the Property in its current condition.
>
> Buyer has, as of the date this Escrow is opened, obtained a preliminary title report on the Property and is satisfied as to the status of title to the Property. Buyer agrees to conveyance of the La Quinta project from Seller by General Warranty Deed, subject to those matters of record set forth in such preliminary title report, and to an Assignment of Lease as to the La Paz project.

As part of the agreement, buyers had the right to extend the date for closing of escrow from October 16, 1979, for three successive thirty day periods on payment into escrow of $50,000.00 for each extension. The buyers chose to exercise their rights to all three extensions depositing an additional sum of $150,000.00 in escrow. Although the terms of the agreement then provided that escrow would close on January 16, 1980, the parties, by mutual agreement, extended the closing date an additional five days until January 21, 1980.

Seller's general partner testified that on January 18, 1980, he received information that buyers would be unable to obtain the anticipated financing and thus would be unable to fulfill the terms of the agreement which required an additional cash payment of approximately $3,900,000.00 at the close of escrow. Acting on this information, seller filed a multi-count complaint on January 18, 1980, commencing the instant action and requested the following alternative relief:

A. For an order awarding seller the earnest money deposit together with interest accrued thereon;

B. For specific performance of the agreement between the parties;

C. For damages for breach of contract;

D. For attorney's fees and costs.

The complaint was followed by a letter to Commonwealth dated January 21, 1980, to the effect that seller had been advised of buyers' alleged inability to obtain the financing necessary to close escrow either on January 21 or in the near future and therefore:

> Seller hereby elects to cancel the escrow effective immediately following the expiration of close-of-escrow date and directs you upon such cancellation to pay the earnest money to Seller in accordance with the escrow instructions.

On January 21, Commonwealth was prepared to issue the ATLA policy of title insurance required by the contract in accordance with the initial preliminary title reports which buyers had examined and approved. When buyers failed to perform or tender performance as of January 21, Commonwealth, in compliance with the escrow instructions, paid $51,588.89 to seller on January 22, 1980, and paid the remaining $200,533.33 the following day.

Buyers filed an answer to seller's complaint on March 20, 1980, denying any breach of the agreement and affirmatively alleging that seller was unable to perform because it could not deliver marketable title to the subject property due to a number of alleged encroachments, encumbrances and clouds on the title. Buyers also filed a counterclaim alleging that seller, by its action in filing the complaint, breached the agreement between the parties; that seller's claims and demands were premature and contrary to the agreement, and that such conduct was wilful and malicious, entitling buyers to punitive damages and attorney's fees. Buyers prayed:

1. For a declaration that the forfeiture of all earnest money be held null and void, and for return of all such earnest money;

2. For actual and punitive damages;

3. For attorney's fees, costs and other incidental relief.

Cross-motions for summary judgment were filed which resulted in the trial court's dismissal of seller's complaint without prejudice as premature and the dismissal of buyers' counterclaim with prejudice. The court, in addition, awarded seller $5,200.00 in attorney's fees.

## THE DISMISSAL OF THE COMPLAINT

Buyers' first argument is not entirely clear. Relying on *Wilhelmi v. Des Moines Ins. Co.*, 68 N.W. 782 (Iowa 1896), buyers are presumably arguing that the dismissal of seller's complaint as premature forever precluded seller from asserting any of the claims set forth in the complaint. *Wilhelmi* involved an insurance claim that resulted in a judgment for the plaintiff but was reversed on appeal for the reason that the action was premature. The plaintiff then filed a second action alleging that the first complaint had *not* been filed prematurely. The court held that where a judgment finally and conclusively determined that an action was brought prematurely the question could not be relitigated.

*Wilhelmi* has no application to the case at hand; seller does not contest the trial court's finding that the complaint was filed prematurely. Rather, this case is governed by the general rule that a dismissal without prejudice does not foreclose a later filing on the same cause of action. *Edgar v. Garrett*, 10 Ariz.App. 98, 456 P.2d 944 (1969). Accordingly, as seller could assert the same claims and raise the same issues in a subsequent action, the dismissal of the original complaint did not preclude seller from raising the same issues by way of a defense to the counterclaim at a time when the issues were no longer premature.

## ANTICIPATORY BREACH OF THE CONTRACT

Buyers' second argument is premised on the supposition that seller both intended and elected to terminate the contract by filing the complaint demanding forfeiture of the earnest money deposit. Relying on *Jahnke v. Palomar Financial Corp.*, 22 Ariz.App. 369, 527 P.2d 771 (1974), buyers contend that the trial court therefore erred in dismissing its counterclaim because seller's action amounted to an anticipatory repudiation of the contract thus relieving buyers of any further obligation to perform. In *Jahnke*, the seller of a hotel filed an action to enforce a forfeiture of all interests of the purchasers of the property. Basically the facts are that on November 10, 1972, the seller, after having repeatedly accepted late payments, sent a notice to the purchasers insisting upon compliance with the "time of the essence" clause in the purchase contract. The notice was not clear as to the date upon which the purchasers would be in default, but in any case it would not be sooner than December 11, 1972. On November 20, 1972, ten days after having sent the notice, the seller filed the complaint. The court held that the complaint was not timely filed in that the cause of action had not yet accrued. The court next addressed the issue of whether the purchaser's failure to tender sums owing under the contract was fatal to his defense of waiver of the "time of the essence" clause. The court held that under the circumstances the purchaser had no such duty:

> The delinquent buyer, and through him his assignee, were offered a reasonable period (thirty days) by the notice requiring strict compliance within which to tender. After ten days had run, [seller] filed its complaint alleging that forfeiture had occurred and that it was entitled to possession. This formal act, apart from being premature as we have held, was an attempted election of remedies and equivalent to a pronouncement by [seller] that the contract was at an end; that the thirty day period provided for in the notice was abrogated, and that tender would be refused.

527 P.2d at 777.

This case does not resolve the issue at hand. While seller filed the complaint prematurely and requested forfeiture of the earnest money, it *also* demanded specific performance of the contract and ex-

pressed a continuing willingness to perform:

> [P]laintiff [seller] has fully performed all of its obligations under the agreement and is prepared to consumate the transaction in accordance with the agreement.

An anticipatory repudiation of a contract is a breach of the promissor's contractual duty before the time fixed for his performance has arrived. *Corbin on Contracts* §§ 941 and 959 (1960). The dispositive question then becomes whether seller's action in filing the complaint was a repudiation of its obligation to perform.

In *Kleeb v. Burns*, 5 Ariz.App. 566, 429 P.2d 453 (1967), Division 2 of this court held that in order for there to be an anticipatory breach of a contract there must be a positive and unequivocal manifestation on the part of the party allegedly repudiating that he will not render promised performance when the time fixed for performance arrives. In this case, seller filed a complaint which requested specific performance of the contract as well as forfeiture of the earnest money and damages. This alternative form of pleading does not itself establish a clear and unequivocal intent on the part of seller to terminate the contract. Moreover, given that seller's letter to Commonwealth did not demand forfeiture of the earnest money deposit except in the event that the closing date expired without performance by buyers, it is apparent that seller was willing to perform as late as the date scheduled for the closing of escrow.

## THE COUNTERCLAIM

### I. Damages for breach of contract

Buyers argue the trial court erred in dismissing the counterclaim for damages for loss of the bargain. Although buyers did not tender payment, nor offer to do so, they contend that seller could not deliver marketable title to the property because it was subject to easements and encumbrances and because the property itself was in disrepair as of January 21, 1980. Citing *Sabin v. Rauch*, 75 Ariz. 275, 255 P.2d 206 (1953), buyers conclude that seller's inability to perform extinguished their obligation to tender further payment.

*Sabin* involved an action for specific performance of a contract for the sale and transfer of real property. In that case the buyer refused to perform on the ground that the seller could not convey good and marketable title. Our supreme court first set forth the general rule:

> in the absence of express provision in the contract to the contrary, it is implied that the seller, when the purchaser meets his obligations under the contract, will convey a marketable title; and if it appears that he will be unable to meet this obligation, specific performance will be denied.

255 P.2d at 208. The court then defined the issue as whether there was a reasonable doubt that the buyer would be hampered in marketing the property since "a condition precedent to granting specific performance is that there exists no reasonable doubt that the buyer will not be hindered nor obstructed in marketing her property." 255 P.2d at 208. This case does not resolve the issue at bench because *Sabin* is concerned only with the propriety of awarding specific performance, an equitable remedy. The question here is whether buyers are entitled to damages under their counterclaim resulting from seller's alleged breach of the agreement, a remedy at law.

Seller, on the other hand, primarily relies on three cases: *Walker v. Estavillo*, 73 Ariz. 211, 240 P.2d 173 (1952); *Snyder v. Betsch*, 56 Ariz. 508, 109 P.2d 613 (1941); and *Steward v. Sirrine*, 34 Ariz. 49, 267 P. 598 (1928).

The court in each decision applied the rule:

> If vendor is able to make good title at the time stipulated for, he may not only maintain an action at law for damages by the purchaser, but may also sue to complete specific performance by the latter and recover the agreed consideration, *and he is in default under such a contract only when the vendee has performed his part of the contract and made demand for a title which the ven-*

*dor is unable to furnish.* (Emphasis added.) *Walker,* 240 P.2d at 176. At first glance, the rule would appear to be dispositive. The above cases are, however, factually at odds with the instant case. Those cases all involved the breach of installment contracts for the sale of real property in which the buyer agreed to make payments over a period of time at the end of which the seller agreed to deliver title. The seller had no duty to deliver title to the property until the buyer fulfilled his obligation; the buyer's obligation was a condition precedent to the seller's duty to transfer title. This case, on the other hand, concerns an agreement that the parties would concurrently perform on January 21, 1980; buyers would tender payment and seller would deliver the necessary documents.

Historically, the courts held that two such promises were mutually independent and unconditional. This is no longer true. The courts now view two such promises as mutually dependent and conditional. *Corbin* § 663 at 177. The seller's obligation to deliver title is conditioned on a tender of payment by the buyer, and the buyer's duty to pay the price is conditioned upon the seller's tender of title. In *Glad Tidings Church v. Hinkley,* 71 Ariz. 306, 226 P.2d 1016 (1951), our supreme court in dealing with a quiet title action brought by a seller against a buyer based on a contract for the sale and purchase of real property, adopted the following rule: A vendor must tender a deed or at least indicate that he is ready, willing and able to tender and deliver a deed upon receipt of payment as a condition to demanding payment of the price, and he cannot without such a tender or offer of tender declare a forfeiture or maintain a suit for payment. Accordingly, before either party can sue on a purchase/sale contract he must first put the other party in default by tendering or offering to tender performance. *See McFadden v. Wilder,* 6 Ariz.App. 60, 429 P.2d 694 (1967); 5 *Williston on Contracts* § 666A (3rd ed. 1961). Under this rule, a buyer who fails either conditionally or unconditionally to tender performance within the

time provided by the terms of the earnest money agreement cannot ordinarily demand damages for failure of the seller to convey good title. *Guillory Corp. v. Dussin Inv. Co.,* 272 Or. 267, 536 P.2d 501 (1975). Here, buyers neither tendered payment nor offered to tender. Under the above rule, seller, regardless of any defects existing in the title, was not placed in default and buyers could not maintain an action for breach of contract.

Complicating matters further, however, the courts have recognized an exception to this rule which relieves the buyer of the obligation to tender performance where the seller has either refused to perform or is clearly unable to do so. *See Kammert Bros. Enter., Inc. v. Tanque Verde Plaza Co.,* 102 Ariz. 301, 428 P.2d 678 (1967); *Glad Tidings Church,* 226 P.2d at 1021. Buyers contend that their failure to perform should be excused because seller was unable to deliver good and merchantable title at the time of closing. Given the resolution of this case on summary judgment, this court must view the facts in the light most favorable to buyers. *Schmidt v. Mel Clayton Ford,* 124 Ariz. 65, 601 P.2d 1349 (App.1979). Consequently, we will assume the truth of buyers' allegations regarding the state of the title and seller's inability to perform on January 21, 1980, in determining the applicability of the exception to this case.

The decisions excusing tender by one party are based on the rationale that the law does not require the performance of a vain and useless act. *See Eychaner v. Springer,* 34 Colo.App. 412, 527 P.2d 903 (1974) [reservation of mineral rights made the title unmarketable]; *Iannelli Bros., Inc. v. Muscarella,* 30 A.D.2d 698, 291 N.Y. S.2d 851 (1968) [contract and deed uninsurable because the land description failed to describe an enclosed parcel]; *Siegel v. Shaw,* 337 Mass. 170, 148 N.E.2d 393 (1958) [property subject to a public easement for a sewer constructed and in place]. In each case the buyer had knowledge prior to the date set for tender that the seller would not be able to deliver a good title. Accord-

ingly the law did not mandate that the buyer engage in the useless ceremony of tendering payment. In this case, however, buyers conceded during oral argument to this court that they had no knowledge of the title problems as of January 21, and that they did not discover the existence of the alleged easements and encroachments until some time prior to the filing of their counterclaim in this action.

Where the buyer has no advance knowledge of the seller's inability to perform, the rationale of the above cases simply does not apply. A buyer's contractual duty to tender performance for which seller gave consideration will not be rendered a vain and useless act by the buyer's indulging in speculation as to the seller's ability to perform. The law excuses buyer's obligation only where the seller, as of the date set for performance, has clearly manifested his inability to perform. To decide otherwise would allow a buyer who has failed to timely tender payment to take advantage of a merely fortuitous occurrence. In *Varacalli v. Williams*, 8 Wash. App. 129, 504 P.2d 790 (1972), the court held that the exception excusing tender of payment by the buyer where the seller is unable to perform does not apply if the buyer had no notice of such inability at the time his performance was due. *See also Guillory Corp.*, 536 P.2d at 505. Thus, buyers' obligation to tender performance here was not excused. As a result, buyers have failed to put seller in breach, a condition necessary to a claim for damages.

Finally we reach buyers' contention that as of January 21, the building was not in the condition required under the contract which thereby excused buyers' obligation to tender performance. Buyers argue that seller had the obligation to deliver the building in the same condition that it was on the date the parties entered escrow. During the period between the opening of escrow and January 21, 1980, buyers alleged that "problems" developed with the air conditioning units and on January 2, 1980, the City of Tucson threatened to condemn a building because of unsafe balco-

nies. Buyers conclude that the building was in a "changed condition" as of January 21, and seller was therefore in breach of the agreement.

Assuming, without deciding, that the condition of the building did not comply with the requirements of the contract, we do not find that this excused buyers from their obligation to tender or offer to tender performance prior to bringing an action on the contract. There is no evidence in the record that the alleged defects were incurable.

## II. *Forfeiture of the earnest money deposit*

Relying on *Vivian Arnold Realty Co. v. McCormick*, 19 Ariz.App. 289, 506 P.2d 1074 (1973), buyers next argue that the trial court erred in denying their claim for return of the earnest money since seller never actually deposited the deed and assignment of lease in escrow. In *Vivian*, a buyer and a seller executed an escrow agreement providing that on a certain date buyer would tender the cash necessary for closing and seller would deliver the deed to the escrow agent. Neither party performed nor tendered performance and buyers brought an action for return of their earnest money deposit. Division 2 of this court affirmed the trial court's ruling which voided the contract and ordered that the earnest money be returned to buyers based upon the court's finding that *both* buyers and sellers breached their respective duties under the contract. *Vivian Arnold* is factually distinguishable from the instant case.

As previously noted, seller expressed its willingness and readiness to deliver the closing documents into escrow upon payment by buyers and Commonwealth was prepared to issue the required ATLA insurance policy. As often mentioned in this opinion, however, buyers did nothing with respect to closing this escrow on January 21. No conditional *or* unconditional tender of the balance of the purchase price was made at that time or any other

time. Pursuant to the specific terms of the agreement between the parties, the earnest money deposit was properly delivered to seller by Commonwealth. Paragraph 48 of the agreement between the parties provides:

*Failure to Close.* In the event Buyer fails to perform all of its obligations necessary to close escrow at the Close of Escrow date, Seller shall be entitled to immediately cancel this Escrow by giving Notice of Immediate Cancellation to Buyer and Escrow Agent and by directing Escrow Agent to remit the earnest money deposit plus interest to Seller.

## THE ALLEGED MOTION FOR LEAVE TO AMEND

Buyers contend that the trial court erred in denying their motion to amend the counterclaim.

We first note that no motion for leave to amend, designated as such, was ever filed in the trial court. The only reference to such a request appears for the first time in the memorandum of points and authorities attached to buyers' "Motion to Vacate and Set Aside Summary Judgment Dismissing Defendant's Counterclaim":

Defendants further urge that the dismissal of Defendants' counterclaim with prejudice and without leave to amend constituted an abuse of discretion. Clearly, the evidence before the Court established that Defendants have good and sufficient grounds for one or more causes of action against the Plaintiff and its "Escrow Agent" Commonwealth Land Title Insurance Company, including but not limited to breach of contract, rescission, mistake, fraud, deceit, misrepresentation, conversion and restitution.

██ We are cognizant of the trial court's duty to freely allow amendments to the pleadings. *See* Rule 15, Arizona Rules of Civil Procedure. Further, where an amended pleading is tendered and leave to amend should be granted under applicable principles, an adversary motion for summary judgment should not be granted before the amendment is filed and considered.

The general admonition is stated in *Rossiter v. Vogel,* 134 F.2d 908 (2d Cir.1943):

[W]here facts appear in affidavits upon motion for a summary judgment which would justify an amendment of the pleadings, such amendment should not be prevented by the entry of a final judgment.

134 F.2d at 912.

██ In the instant case, the request for leave to amend was apparently first urged after the motion for summary judgment had been submitted for decision, after the trial court had advised the parties that summary judgment would be entered and after the court's subsequent entry of a final judgment. No proposed amendment to the counterclaim was ever formally tendered. Under these circumstances, the request was addressed to the sound discretion of the trial court and we fail to perceive any abuse of discretion in the court's refusal to vacate the judgment in order to allow the filing of an amended counterclaim.

## BUYERS' RIGHT TO A TRIAL BY JURY

██ Buyers argue that the trial court's order dismissing their counterclaim violated their right to a jury trial as guaranteed by the seventh amendment to the United States Constitution. We find this argument to be frivolous. *See Morrell v. St. Luke's Medical Center,* 27 Ariz.App. 486, 556 P.2d 334 (1976).

## AWARD OF ATTORNEY'S FEES

Buyers claim that the trial court's award of attorney's fees to seller was improper as contrary to the applicable provision of the escrow agreement:

In the event suit is brought or an attorney is retained by any party to this Agreement to enforce the terms of this Agreement or to collect any moneys due hereunder, or to collect money damages for breach hereof, the prevailing party shall be entitled to recover ... reim-

bursement for reasonable attorney's fees ... incurred in connection therewith.

Essentially, buyers argue that seller could not be the "prevailing party" because the court dismissed its complaint. In response, citing *Ocean West Contractors, Inc. v. Halec Const. Co.*, 123 Ariz. 470, 600 P.2d 1102 (1979), seller argues that it is the prevailing party because it has been allowed to retain the earnest money which was part of the relief sought in the complaint.

We find that sellers were clearly the prevailing party. Although their complaint was dismissed, the trial court nevertheless ruled in their favor as counterdefendants when the counterclaim was dismissed. The central issue in the litigation at that point in time was whether buyers were entitled to damages including a return of the earnest money deposit and the trial court resolved the issue in favor of seller.

Seller has also requested its attorney's fees for this appeal and is entitled to recover such fees pursuant to the agreement between the parties. Seller shall file a statement of amount claimed for such fees with supporting affidavits in compliance with Rule 21(c); Arizona Rules of Civil Appellate Procedure, and this court's decision in *Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 673 P.2d 927 (App.1983).

## CONCLUSION

For the foregoing reasons the judgment of the trial court is affirmed.

MEYERSON, P.J., concurs.

CORCORAN, Judge.

I concur in the result.