782 P.2d 719

**Thomas TOWER dba Tower Development, Plaintiff/Appellee,**

v.

**James E. HALDERMAN, Defendant/Appellant.**

**No. 2 CA–CV 89–0101.**

Court of Appeals of Arizona, Division 2, Department B.

Oct. 17, 1989.

Pasquale R. Cheche, P.C. by Pasquale R. Cheche and Paul G. Ulrich, P.C. by Paul G. Ulrich and Tracey Westerhausen, Phoenix, for plaintiff/appellee.

Bellamak & Mitchell by Ferris W. Bellamak, Scottsdale, for defendant/appellant.

OPINION

FERNANDEZ, Chief Judge.

James Halderman appeals from the judgment entered against him after a court trial in appellee Thomas Tower's suit for specific performance of a real estate contract. Halderman argues that the trial court erred in awarding Tower specific performance, contending that Halderman cancelled the contract and that Tower failed to prove that he was able to pay the funds required to close escrow. We affirm.

In June 1985, Halderman was the lessee of a parcel of land in the Scottsdale–Tempe area with an option to purchase. He signed a listing agreement with Debbie Brugliera to sell the property. On July 31, 1985, Halderman accepted an offer from Tower, an experienced real estate agent, to purchase the property. Halderman was

then operating a boat sale and repair business on the property.

The selling price was $337,000, to be paid as follows: $5,000 earnest money; $40,000 cash to be paid "[o]n or before close of escrow"; $200,000 in a new loan to be obtained by Halderman and secured by the property; and a second note and deed of trust in Halderman's favor in the amount of $92,000. With regard to the new loan, the contract provided as follows: "Seller to secure new loan; Buyer to approve said terms in writing within 24 hours of Sellers [sic] notification; Seller to allow Buyer to assume." It also provided: "This contract contingent upon Buyer obtaining and approving the following: 1. Preliminary title report 2. Survey 3. Soil compaction test 4. Any and all renderings necessary to comply with municipal ordinances." Close of escrow was set for January 30, 1986.

Escrow was opened August 1, 1985 at Ticor Title Insurance and a preliminary title report was issued August 28. On September 25 Halderman obtained an interest-only five-year loan in the amount of $200,000 from Sentinel Savings and Loan Association. On October 11 he obtained title to the property as a result of the exercise of his option to purchase. In early December close of escrow was extended to April 25, 1986 at Halderman's request.

The parties took no further action until March 30, 1986 when Tower sent a letter to Ticor stating that the four contract contingencies had been satisfied. An amended preliminary title report was sent to Halderman's agent on April 25. It listed the deed of trust on the loan from Sentinel Savings recorded October 15, 1985.

Halderman's agent Brugliera testified that she knew Halderman had obtained the loan in the fall of 1985 but never had any details about it until she received the amended title report in April 1986. The escrow officer testified that Ticor obtained a copy of the deed of trust from the county recorder's office and repeatedly attempted to obtain a copy of the note from Sentinel. Ticor was finally successful on May 1. A copy of the note was delivered to Brugliera who then showed it to Tower. Because

Sentinel had told the escrow officer that Tower would have to qualify to assume the loan, a process Tower testified would take an additional 30 to 90 days, and because the extended date for close of escrow had already passed, Tower responded within the required 24-hour period by executing a form prepared by Ticor at Brugliera's request. The form instructed Ticor to close escrow without notifying Sentinel and without obtaining its consent to transfer of title. Brugliera presented the form to Halderman, but he never signed it.

On May 15 Halderman's attorney sent two forms to Ticor, both of which were signed by Halderman. One provided that the parties mutually agreed to cancel escrow. Tower never signed that form. The second form stated that Halderman had elected to cancel escrow at the end of 13 days as provided in the contract unless Tower remedied his breaches. The two breaches listed were that Tower had not approved the new loan within 24 hours of notification and that he had not waived the four contract contingencies. Ticor sent copies of the two forms to all interested parties on May 20. On May 30 Tower responded with a letter to Ticor that he was ready, willing and able to close escrow. At Tower's request, the escrow officer sent Halderman a letter on May 30 stating that Ticor could advise Tower as to the amount of funds required to close when Halderman furnished the required mortgage information and signed the final documents. No further action was taken, and Tower filed suit on June 2, 1986.

CANCELLATION OF CONTRACT

■ The contract provided as follows:

Cancellation. If any party elects to cancel this Contract because of any breach by another party or because escrow fails to close by the agreed date, the party electing to cancel shall deliver to escrow agent a notice containing the address of the party in breach and stating that this Contract shall be cancelled unless the breach is cured within the 13 days following the delivery of the notice to the escrow agent. If the breach is not

cured within such period, this Contract shall be cancelled. Within three days after receipt of such a notice, the escrow agent shall send it by United States Mail to the party in breach at the address contained in the notice. Notice shall be effective on the date of mailing and no further notice shall be required.

Halderman contends that the contract was cancelled by his notice of cancellation sent May 15, 1986. Only two breaches are listed in that notice: the failure of Tower to remove the contract contingencies and his failure to approve Halderman's loan within 24 hours after he received notification of it. Halderman conceded in cross-examination that Tower had deleted the contract contingencies in a letter to Ticor dated March 30, a month and a half before Halderman's cancellation notice. Halderman also testified that Brugliera had notified him approximately May 2 that Tower had timely approved the Sentinel loan, nearly two weeks prior to the cancellation notice. Halderman in essence, then, acknowledged that Tower was not in breach at the time the notice was sent. Those two requests, therefore, could not properly trigger a cancellation of the contract.

Halderman also argues that the contract was cancelled because the April 25 closing date had passed. In making that argument, however, he ignores the fact that that was not one of the reasons listed in his cancellation notice. We fail to see how the passing of the specified escrow date can serve as the basis for cancellation when that reason was not listed.

## ANTICIPATORY REPUDIATION

■ Halderman also contends that the contract was cancelled because Tower failed to deposit the $40,000 into escrow. He argues that on May 28, 1986, when the 13-day cancellation period expired, his only remaining task as seller was to sign a deed to Tower and deposit it with Ticor. He argues that Tower cannot obtain specific performance because he never tendered the required $40,000, citing *Esplendido Apartments v. Olsson*, 144 Ariz. 355, 697 P.2d 1105 (App.1984). That case, however, recognizes the existence of the exception to the rule requiring the buyer to tender performance in cases when the seller has refused to perform. In order to determine the applicability of that exception to this case, we must analyze the parties' obligations under the contract.

Under the contract Halderman had several obligations. He was required to secure a new loan on the property, to notify Tower when he secured the loan so Tower could approve or disapprove it, and to permit Tower to assume the loan. In addition, he was required to obtain clear title to the property and to pay off a tax lien and another loan that was secured by the property. Finally, he was required to execute the documents necessary to close the transaction.

The evidence was that Halderman had obtained clear title to the property and had paid the tax lien. He also secured a new loan on the property that was not an assumable loan. Although he obtained the loan in September 1985 and testified that he understood he was to notify Tower about the loan, he admitted he never did so. Halderman also testified that he never told Sentinel he intended to sell the property, never gave Tower permission to contact Sentinel about assuming the loan, never gave Tower copies of the note and deed of trust and never supplied Ticor with information about the loan. Moreover, he never supplied information about the additional loan that was required to be paid off before he transferred title to Tower.

Tower, on the other hand, was obligated under the contract to pay $5,000 earnest money, to pay $40,000 plus closing costs on or before close of escrow, to approve or disapprove Halderman's new loan within 24 hours after he was notified of it, to assume the new loan, to approve the four contract contingencies, and to execute a promissory note and deed of trust for $92,000. The evidence was that Tower paid the earnest money, approved the new loan within 24 hours of notification, approved the four contingencies, executed a deed of trust for the second mortgage, and agreed to take the property subject to the Sentinel loan with the hope of working something out later rather than extending escrow an additional 30 to 90 days while he attempted to qualify for the Sentinel loan.

Thus, despite Halderman's contentions to the contrary, the evidence showed that Halderman had several remaining tasks as seller, none of which he ever made any effort to perform. For example, the escrow officer testified that he was never able to calculate the exact amount Tower was required to pay at closing because he never received sufficient loan information from Sentinel. Brugliera testified that she asked Halderman for that information several times, but he never produced it.

Halderman testified that at the time he instructed his attorney to send the cancellation notices, he did not want to sell the property but that he was prepared to go through with the deal at any time. He also testified that he would have closed escrow if Tower had deposited the $40,000 in escrow. Brugliera testified that on May 2 when she asked Halderman to sign the form for Ticor not to notify Sentinel of the sale, he expressed "great distress" over the fact that the property was sold. She also testified that shortly before he sent the cancellation notices, he told her she could meet with his attorney and renegotiate the contract. In addition, she testified that he told her that he would go through with the sale although he did not want to.

The trial court found that Halderman repudiated the contract. Halderman contends that conclusion is erroneous, citing *Ceizyk v. Goar Service & Supply*, 21 Ariz. App. 119, 516 P.2d 61 (1973). In that case this court held that a mere statement by the sellers that they did not want to sign some of the closing documents did not constitute a positive refusal to perform. Halderman cites to both his testimony and that of Brugliera that he would perform although he did not want to. The facts in this case are not like those in *Ceizyk*, however. Here, there was far more than a statement that Halderman did not want to sell the property. Instead, there was an active refusal to supply required information and a notice of cancellation complaining about obligations that had already been performed. The failure to comply with his contract obligations despite repeated requests that he do so are more telling than Halderman's statements that he would per-

form although he did not want to. That failure to perform exemplifies the adage: "Actions speak louder than words."

We find that the evidence supports the trial court's conclusion that Halderman repudiated the contract, thereby excusing Tower from tendering payment of the $40,-000. We also find the facts in the two other cases cited by Halderman on this issue to be so dissimilar to those in this case as to be inapplicable. *See Allan v. Martin*, 117 Ariz. 591, 574 P.2d 457 (1978) and *Dalton v. McLaughlin*, 130 Ariz. 270, 635 P.2d 863 (App.1981).

## PROOF OF ABILITY TO PAY

██ Halderman's second issue on appeal is that Tower failed to carry his burden of proof that he was ready, willing and able to deposit the $40,000 in escrow so as to preclude a finding that he is entitled to specific performance.

Tower testified that he had the funds available to close escrow at the time he sent his May 30, 1986 letter to Ticor stating he was ready, willing and able to close. He also testified that the money was in his bank on April 26, 1986 and that if the court ordered him to at trial, he would pay the funds into court. Finally, he introduced into evidence a copy of his letter of May 30, 1986 to Ticor in which he stated, "My funds are readily available and we will deposit the required amount immediately upon your notification that you have the necessary documents and information from the Seller to close." There was no evidence to the contrary. Under the facts of this case, we find sufficient evidence to support the trial court's finding that Tower was able to perform.

Appellee will be awarded attorney's fees on appeal upon compliance with Rule 21(c), Ariz.R.Civ.App.P., 17B A.R.S.

Affirmed.

LIVERMORE, P.J., and LACAGNINA, J., concur.