OPINION
EHRLICH, Judge.
¶ 1 The United Effort Plan Trust (“UEPT”) appeals the trial court’s dismissal of its complaint for forcible detainer and the court’s order to the UEPT to allow Milton and Lenore Holm to remain on the UEPT’s property for Mr. Holm’s lifetime or to pay Mr. Holm “just compensation.” For the following reasons, the order of dismissal is affirmed; the other orders are vacated.

FACTS AND PROCEDURAL HISTORY

¶ 2 The Fundamentalist Church of Jesus Christ of Latter-Day Saints (“Church”) operates under the principle of the United Order of Heaven. Under the United Order, Church members give their property to “the Lord and the Church” to demonstrate their devotion and faithfulness to the fellowship principles of the Church. In return, the members receive an “inheritance” or “stewardship” from the bishop of the Church, which may be in the form of land, dependent on the bishop’s assessment of the members’ wants and needs. A member’s stewardship may be taken away by the Church if the member breaks its commandments, apostatizes or fails to support Church leaders.
¶ 3 The Church created the UEPT as a legal instrument to assist the achievement of the principles of the United Order. The UEPT is intended to benefit all Church members, who in turn are encouraged to give their property to the Church through this instrument for the Church’s use in carrying out the United Order.
¶ 4 Pursuant to the United Order, some members are allowed to build homes on the UEPT’s land. The bishop and the president of the Church decide which members are entitled to build on the UEPT’s property based on whether the member’s life is “worthy of participation in the trust.” Members who obtain the use of a UEPT lot make a commitment that they and their families will live in accordance with the UEPT’s and the Church’s principles, and agree to be governed by the organization’s Board of Trustees and the leaders of its priesthood. Members permitted to build homes on UEPT land are expected to pay a suggested amount of annual property tax consistent with their ability to pay.
¶ 5 In 1976, at age nineteen or twenty, Mr. Holm received permission from Edson Jes-sop and Church President Leroy Johnson to build a family home on an acre of UEPT property in Colorado City. Mr. Holm selected a lot, and, when he asked Mr. Johnson what type of building materials to use in constructing his home, Mr. Johnson told Mr. Holm to build his house as if he would “live there forever,” in fact recommending cinder block rather than brick veneer. It was Mr. Holm’s understanding that he would always have a place to care for his family and that he need not worry about losing his home. In addition, Mr. Holm believed that he was entitled to and would have an inheritance in the UEPT property because his father had donated a significant amount of money and time to the UEPT.
¶ 6 On December 20, 1977, the Church asked and Mr. Holm signed an untitled document, stating the following:
This is to certify that I Milton 0. Holm understand the United Effort Plan, to which I do hereby subscribe myself, realizing that for the security of our homes, which cannot be mortgaged — sold or bartered away, that whatever improvement is made on the premises, which are allotted for our use, becomes part of and are to remain part of said premises, regardless of what course I may choose to take; and that I further agree to pay my allotted share of taxes levied against the property I occupy — of my own free will and choice....
¶ 7 The first home that Mr. Holm constructed on the UEPT land allocated him by the Church burned, and he then built a home of more than 5000 square feet, performing *339 much of the work himself, and paying for and trading services for the remaining work. In addition, Mr. Holm sold a mobile home, using the proceeds to buy materials for his new home. Over the years, Mr. Holm paid his share of property taxes with both cash and labor for the Church. Mr. Holm later testified that he would never have built his home on the UEPT property had he not been told or led to believe that he could reside there with his family forever.
¶ 8 In 1987, Mr. Holm received a letter signed by Rulan Jeffs, then the President of the Church, advising Mr. Holm that all residents on UEPT land were tenants-at-will, residing on the land “at the pleasure of’ the UEPT trustees.[1] The letter states that this information was “explained to [the residents] in great detail” when they began living on the property. It further tells the residents that “[a]ny such voluntary improvements [have] become part of the land and are not to be moved, transferred, demolished or assigned to other occupants without the consent of the United Effort Plan.” The letter asserts that its contents are not a “change” but a “written clarification of pre-existing policy.” There is no evidence that Mr. Holm objected to this letter.
¶ 9 When Mr. Holm moved onto the UEPT land, the parties had no tenancy contract and never entered one. Mr. Holm later testified that, when he was given permission to use the land and began building his home, he was not told by the Church that he was a tenant-at-will.
¶ 10 In 1993, Mr. Holm married Lenore. She began working on the home and buying materials for improvements with her money.
¶ 11 The Declaration of the UEPT was amended in 1998. One of the apparent reasons for this action was to state that the residents on the UEPT land were tenants-at-will.
¶ 12 Another principle of the Church is plural marriage. In January 2000, Rulan Jeffs and Warren Jeffs interviewed Mr. and Mrs. Holm, and advised them that Wynn Jessop, a thirty-nine-year-old married man, wanted to enter a marriage with Mrs. Holm’s fifteen-year-old daughter.[2] Mrs. Holm consented to the marriage, and Church leaders scheduled the wedding for the next day.
¶ 13 Before the wedding, however, Mrs. Holm telephoned Warren Jeffs to revoke her consent to her daughter’s marriage. Warren Jeffs then told Mrs. Holm that his father, Church President Rulan Jeffs, would be “very disappointed” in Mrs. Holm. Five to ten minutes later, Warren Jeffs called the Holms and informed Mr. Holm that his priesthood had been taken away, that Mr. Holm had allowed his wife to rule over him, that Mr. Holm was no longer a member of the Church and that he was required to leave his home. Warren Jeffs also told Mr. Holm that Rulan Jeffs indeed was unhappy that Mrs. Holm had revoked her consent to her daughter’s marriage.
¶ 14 When the Holms did not leave their home, the UEPT sent them a Demand for Possession of Real Property, revoking its permission for the Holms to possess the land and ordering the Holms to leave behind anything affixed to the property. Mr. Holm was unsuccessful in trying to resolve the matter with Rulan Jeffs, but he and his family did not move out of their home. Once the UEPT attempted to remove the Holms from then-home, it refused to accept their payment for the property taxes.
¶ 15 On August 14, 2000, the UEPT filed a forcible-detainer complaint against the Holms in justice court seeking their eviction. The UEPT claimed that it owned the property on which the Holms had built their home, and that Mr. Holm was a tenant-at-will who had used the property with the permission of the UEPT but that the permission had been revoked.
*340 ¶ 16 The justice court transferred the case to the Mohave County Superior Court because the amount at issue in the case exceeded the justice court’s jurisdictional limits. The UEPT filed a motion for summary judgment, which the court granted because the Holms had not responded to the motion.
¶ 17 The Holms then filed a motion for a new trial denying the existence of a landlord-tenant relationship and asserting a life-estate interest in the property. In addition, they raised the defenses of unjust enrichment and defensive collateral estoppel based on a similar UEPT case, Jeffs, 970 P.2d 1234, and they alleged that the UEPT had violated public policy by evicting them for having refused to allow their daughter to enter a plural marriage.
¶ 18 The trial court granted the Holms’ motion and vacated the summary judgment. On May 15, 2003, a bench trial was held. The court dismissed the UEPT’s complaint, ruling that, although the UEPT owned the land and the improvements, it was not entitled to possession because Mr. Holm had a life interest in the estate and because to award the UEPT possession would result in its unjust enrichment.
¶ 19 The trial court also ordered that Mr. Holm be allowed to remain on the property for his lifetime or be paid just compensation for his investment. It also ruled that the land and improvements would revert to the UEPT upon Mr. Holm’s death “without compensation to Mr. Holm or to his estate or survivors,” specifically declaring that Mrs. Holm had no separate right in the UEPT property and that her community property rights depended on Mr. Holm’s rights. The court added that Mr. Holm’s right to occupy the land would be terminated without right of reimbursement for the improvements if he attempted to convey the land or improvements or if he abandoned the land as his residence. In addition, the court determined the parties’ rights and obligations regarding future improvements, and it ordered Mr. Holm to pay all future property taxes on his land, including specific penalties for nonpayment.

DISCUSSION

¶ 20 The UEPT based its complaint on Arizona Revised Statutes (“A.R.S.”) § 12-1171 (2003) and on its assertion that Mr. Holm was a tenant-at-will. Section 12-1171(3) states that a person is guilty of forcible detainer if he:
Wilfully and without force holds over any lands, tenements or other real property after termination of the time for which such lands, tenements or other real property were let to him or to the person under whom he claims, after demand made in wilting for the possession thereof by the person entitled to such possession.
Section 12-1173 (2003) adds that there is a forcible detainer if:
1. A tenant at will or by sufferance or a tenant from month to month or a lesser period whose tenancy has been terminated retains possession after his tenancy has been terminated or after he receives written demand of possession by the landlord.
¶ 21 Both A.R.S. § 12-1171 and § 12-1173 apply only when- the parties have a landlord-tenant relationship. Phoenix-Sunflower Indus. v. Hughes, 105 Ariz. 334, 336, 464 P.2d 617, 619 (1970); Cottonwood Plaza Assocs. v. Nordale, 132 Ariz. 228, 231, 644 P.2d 1314, 1317 (App.1982); State v. Carrillo, 26 Ariz.App. 113, 114, 546 P.2d 838, 839 (1976); see also Moore v. Blackstone, 20 Ariz. 328, 329, 180 P. 526, 527 (1919) (Forcibledetainer actions arise per statute “only when the premises are demised or let to the defendant or some person under whom he claims.”); Kadera v. Maricopa County Super. Ct., 187 Ariz. 557, 563, 931 P.2d 1067, 1073 (App.1996) (Cooperator and cooperative corporation not “tenant” and “landlord” under the Arizona Residential Landlord and Tenant Act (“ARLTA”), and thus the forcible-detainer remedy of A.R.S. § 12-1171 did not apply even though the parties thought that they had a landlord-tenant relationship.); cf. Andreola v. Arizona Bank, 26 Ariz.App. 556, 558, 550 P.2d 110, 112 (1976) (Despite the lack of a landlord-tenant relationship, a former property owner became a tenant at sufferance when he failed to surrender possession upon foreclosure of his interest in the deed of trust.). The purpose *341 of a forcible-detainer action is limited, however; it is not a vehicle to decide whether the parties have a landlord-tenant relationship or were under a lease agreement. See RREEF Mgmt. Co. v. Camex Prods., Inc., 190 Ariz. 75, 79, 945 P.2d 386, 390 (App.1997) (A forcible-detainer suit cannot “be used to determine the existence of a rental agreement between the parties.”); Colonial Tri-City Ltd. P’ship v. Ben Franklin Stores, Inc., 179 Ariz. 428, 434, 880 P.2d 648, 654 (App.1993) (“[W]hether the parties have created a landlord and tenant relationship is ... not properly determined in a summary proceeding.”). Rather, the action is intended to “afford a summary, speedy and adequate remedy for obtaining possession of the premises withheld by a tenant in violation of the covenants of his tenancy or lease.” Phoenix-Sunflower, 105 Ariz. at 336, 464 P.2d at 619. See Olds Bros. Lumber Co. v. Rushing, 64 Ariz. 199, 204-05, 167 P.2d 394, 397 (1946). As such, no counterclaims, offsets or cross complaints are “available either as a defense or for affirmative relief in such action.” Olds Bros. Lumber, 64 Ariz. at 205, 167 P.2d at 400.[3] Although the fact of title may be admitted if incidental to proving a right to possession, the merits of title cannot be litigated. A.R.S. § 12-1177 (2003); Phoenix-Sunflower Indus., 105 Ariz. at 337, 464 P.2d at 620; Andreola, 26 Ariz.App. at 557, 550 P.2d at 111. The only issue to be decided in the action is the right of actual possession. Thus the only appropriate judgment is the dismissal of the complaint or the grant of possession to the plaintiff. Olds Bros. Lumber, 64 Ariz. at 205, 167 P.2d at 400. A real dispute regarding a landlord-tenant relationship must be tried in an “ordinary civil action, in which time periods are not accelerated, counter- and cross claims are allowed, and there is an opportunity for discovery.” RREEF Mgmt. Co., 190 Ariz. at 79, 945 P.2d at 390.
¶ 22 The UEPT claimed that a tenancy relationship existed between the parties, a claim based on its ownership of the land and its assertion that the Holms had only been given permission to use the land as long as they acted in accord with the Church’s principles. It alleged that, because Mr. Holm was no longer in compliance with those principles, its permission to use the land had been revoked and he was guilty of forcible detainer.
¶ 23 The Holms, in turn, denied the existence of a tenancy and claimed a life-estate interest in the land. Their claim was based on Mr. Holm’s belief that he would never have to leave the house that he had labored to construct on the land, buttressed by his and Mrs. Holm’s expenditure of significant money and time to build their family home. In addition, no written tenancy contract existed between the parties, no money exchanged hands, and Mr. Holm paid the property taxes on the land.
¶ 24 The trial court properly dismissed the UEPT’s complaint but not as it did on the merits and with executory orders. A genuine dispute exists that can only be resolved beyond the limitations of a summary forcibledetainer action and in the context of a conventional civil action. The legal relationship between the parties depends upon their history since 1976 of oral and written understandings and agreements as do issues of the existence of a life estate, defensive collateral estoppel,[4] and alleged violations of public policy and constitutional rights. This court will, however, affirm the trial court when it reaches the correct conclusion even if it does so for an incorrect reason. City of Phoenix v. Geyler, 144 Ariz. 323, 330, 697 P.2d 1073, 1080 (1985).

CONCLUSION

¶ 25 The trial court’s dismissal of the UEPT’s complaint is affirmed. Its remaining orders are vacated.
CONCURRING: LAWRENCE F. WINTHROP, Judge and MARK F. ACETO, *342 Judge Pro Tempore *.

. The Holms claim that this letter was sent to residents in light of some dissension in the Church. Indeed, the letter seemingly resulted in litigation that ended in an opinion of the Utah Supreme Court, Jeffs v. Stubbs, 970 P.2d 1234 (Utah 1998), cert. denied, 526 U.S. 1130, 119 S.Ct. 1803, 143 L.Ed.2d 1007 (1999).

. The record is unclear whether this conversation took place on January 15th, 16th or 26th. Mrs. Holm testified that it was the night before her daughter’s 16th birthday, which would have been January 26th.

. Exceptions do exist for counterclaims made under A.R.S. § 33-1365(A), which arise out of a rental agreement or the ARLTA. Mead, Samuel & Co., Inc. v. Dyar, 127 Ariz. 565, 569, 622 P.2d 512, 516 (App.1980).

. The Holms rely on Jeffs, 970 P.2d 1234, but that case was a consolidation of several cases and not only a forcible-detainer action.