NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# Arizona Court of Appeals
### Division One

---

S & S HOLDINGS, LLC, *Plaintiff/Appellant/Cross-Appellee*,

*v.*

AMERICAN GREEN, INC., *Defendant/Appellee/Cross-Appellant*.

No. 1 CA-CV 21-0433
FILED 8-23-2022

---

Appeal from the Superior Court in Maricopa County
No. CV2020-016733
The Honorable David W. Garbarino, Judge

**AFFIRMED IN PART; VACATED IN PART**

---

COUNSEL

Dorsey & Whitney LLP, Phoenix
By Isaac M. Gabriel, Julie P. Walters
*Counsel for Plaintiff/Appellant/Cross-Appellee*

Wilenchik & Bartness PC, Phoenix
By Dennis I. Wilenchik, John D. Wilenchik, Ross P. Meyer
*Counsel for Defendant/Appellee/Cross-Appellant*

---

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the court, in which Presiding Judge Jennifer B. Campbell and Judge James B. Morse Jr. joined.

---

**H O W E**, Judge:

¶4            Appellant S & S Holdings, LLC ("S&S") challenges the superior court's ruling finding its commercial tenant, American Green, Inc. ("American Green"), not guilty of forcible detainer. S&S also challenges the denial of its motion for summary judgment. American Green cross-appeals, contending the court's attorney fee award was insufficient. We affirm on all issues except for the court's determination of rent under the parties' extension agreement for the current and future option terms, which we vacate.

## FACTUAL AND PROCEDURAL HISTORY

¶5            Shane Howell, the owner of S&S, operates a swimming pool rebar company under the trade name "Scholz Rebar." Howell bought Scholz Rebar in 2007; at that time, the company operated out of a Phoenix building with a "Scholz Rebar" sign on it (the "Building"). S&S now owns the Building.

¶6            In November 2014, S&S and American Green entered into a one-year commercial lease for the Building (the "Lease"). The Lease provided that the Scholz Rebar sign remain in place on the Building and that American Green not unilaterally alter the roof without S&S's prior written approval and use a contractor S&S chose or approved. Under section 13.1 of the Lease, the "Lessee" defaults on the Lease if it fails to "comply with or perform any of the terms, covenants, conditions or Rules and Regulations under this Lease." It also stated that a breach of the Lease included "[a] Default by Lessee as to the terms, covenants, conditions or provisions of this Lease . . . where such Default continues for a period of 30 days after written notice." Lastly, the Lease's waiver provision, section 12.2 said that "[n]o waiver by Lessor of the Default or Breach of any term, covenant or condition hereof by Lessee, shall be deemed a waiver of any other term, covenant or condition hereof, or of any subsequent Default or Breach by Lessee of the same or of any other term, covenant or condition hereof."

¶7         Shortly before the Lease expired, the parties entered a "Lease Extension" (the "Extension") effective December 1, 2015. The Extension called for an initial five-year term with three tenant options to renew and gave American Green "the first option to purchase this building in the event [S&S] chooses to sell this property." The Extension also allowed S&S to "remain/occupy [its] current office area for up to 8 months" and provided that the Scholz Rebar sign would "remain in place on [the] [B]uilding."

¶8         In 2017, American Green had some work done to improve the roof. In that same year, either American Green or a contractor it retained removed the Scholz Rebar sign. The parties exchanged text messages in May 2017 in which Howell told American Green the sign was "part of the [L]ease" and that he needed it. In June 2017, American Green told Howell that the Scholz Rebar sign had been "scrapped so we need to revisit about how to replace it." The parties disputed whether they had further discussions about the sign, but American Green never replaced it.

¶9         On June 5, 2020, American Green exercised the first Extension option. In August 2020, a storm damaged the roof. American Green retained the same contractor it had used earlier to repair the roof. S&S reimbursed American Green and filed a claim with its insurer, who paid the claim. Shortly thereafter, Howell, while reviewing photographs of the August 2020 roof damage, discovered the previous roof work.

¶10         On October 15, 2020, S&S sent a notice of default to American Green alleging it had violated the Lease provision "requiring the Scholz [Rebar] sign to remain in place on the [B]uilding" and the roof provision. S&S demanded that American Green "(i) cure the Sign Default, and (ii) reimburse Landlord $11,000 for the damages sustained relating to the Roof Default." It cited section 39.4 of the Lease, which stated that "[a]n Option shall terminate and be of no further force and effect, notwithstanding Lessee's due and timely exercise of the Option, if, after such exercise and prior to the commencement of the extended term or completion of the purchase . . . (ii) if Lessee commits a Breach of this Lease."

¶11         S&S also claimed that American Green's exercise of the first Extension option would not be effective unless the parties agreed on "the amount of rent to be paid for the next 5 years." The letter also said that because the Lease expressly provided that "Option shall terminate and be of no further force or effect . . . if Lessee commits a Breach of this Lease," if the Defaults were not timely cured, the option would be deemed automatically terminated, and S&S would require American Green to vacate the Building "no later than November 30, 2020." American Green

did not cure the defaults and S&S sent a second letter in December 2020 demanding that American Green vacate the Building. American Green refused.

¶12            S&S sued for forcible entry and detainer ("FED"). In its motion for summary judgment, S&S argued that American Green breached the Lease when it removed the sign and altered the roof. Although S&S notified American Green that it had defaulted under the Lease and explained how it could cure the defaults, American Green did not cure the defaults, which meant that any potential option had been automatically terminated and it had no right to possess the Building. American Green responded that any alleged default was de minimis and also moved for summary judgment.

¶13            On the first day of the bench trial on the FED action, the court expressed reluctance to grant summary judgment to either side because fact questions remained: (1) whether the sign and roof issues S&S identified were material breaches of the Lease; and (2) "what the intent was with respect to the Option." At trial, Howell testified that American Green's roof work in 2017 caused or exacerbated the August 2020 roof damage. He admitted, however, that S&S' insurer paid for the whole roof except for a $1,000 deposit. He further testified that he expected the sign to remain, which is why it was a material term in the Lease and why he had continued conversations with American Green about the sign. Conversely, American Green's chairman, David Gwyther, testified that 2017 roof work did not substantially alter or modify the roof. And both Howell and American Green's Chief Operating Officer, Jonathon Green, testified to what rent would be for Extension. No one disputed that American Green had invested over $3 million dollars into the property.

¶14            The court found American Green not guilty of forcible detainer and denied both summary judgment motions as moot. It found that S&S had "waived its rights to pursue return of possession of the premises based upon the removal of the sign." It then applied Restatement (Second) of Contracts § 241 to find that American Green had not materially breached the roof provision. The trial court found that American Green validly exercised its option and then determined that "[t]he current monthly rate in effect for the month of November 2020"—$6,000 plus triple net—would be "the operable monthly rate for the options going forward."

¶15            American Green requested attorney fees totaling $67,433.02 under A.R.S. § 12–341.01(A), the Lease, and the Extension. S&S objected to the fee application on numerous grounds. The court awarded American

4

Green $30,000 in fees. S&S then timely appealed from the court's final judgment, and American Green filed a timely notice of cross-appeal. We have jurisdiction over the appeal and cross-appeal under A.R.S. § 12–2101(A)(1).

## DISCUSSION

**¶16**  S&S argues that the court erred in finding American Green had validly exercised its option and therefore had right to possess the Building and that the court erred in denying it summary judgment. American Green cross-appeals the trial court's reduction in attorney fees. We review the trial court's legal conclusions, including its summary judgment ruling, de novo but will defer to its finding of fact unless they are clearly erroneous. *Town of Marana v. Pima Cnty.*, 230 Ariz. 142, 152 ¶ 46 (App. 2012). A fact finding is not clearly erroneous if substantial evidence supports it even if the evidence is conflicting. *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 51–52 ¶ 11 (App. 2009). We review the trial court's fee award for an abuse of discretion. *Iverson v. Nava*, 248 Ariz. 443, 451 ¶ 27 (2020).

## I. Summary Judgment

**¶17**  S&S argues that the court should have granted it summary judgment because American Green did not file a controverting statement of facts with its response, citing Ariz. R. Civ. P. 56(e). Although an order denying summary judgment typically is not appealable even after entry of a final judgment, *Cal X-Tra v. W.V.S.V. Holdings, L.L.C.*, 229 Ariz. 377, 409 n. 50 ¶ 105 (App. 2012), we may review a purely legal issue where "the facts are not merely undisputed but immaterial," *Ryan v. San Francisco Peaks Trucking Co.,* 228 Ariz. 42, 48 ¶ 20 (App. 2011) (internal quotation marks omitted). Because the law is clear that "failure of the opposing party to file controverting affidavits does not in and of itself make the granting of the summary judgment appropriate," *N. Contracting Co. v. Allis-Chalmers Corp.*, 117 Ariz. 374, 377 (1977) (internal quotation marks omitted), and the alleged facts are material and do not raise a pure question of law, *see Ryan,* 228 Ariz. at 48 ¶ 20, S&S cannot appeal the denial of summary judgment. *Id*.

## II. The Trial

**¶18**  A forcible entry and detainer proceeding is a summary and speedy statutory remedy for obtaining possession of premises by one entitled to actual possession. *Bank of N. Y. Mellon v. Dodev*, 246 Ariz. 1, 10 ¶ 31 (App. 2018). Whether the option is effective controls whether American Green is entitled to possession. *See* A.R.S. § 12–1171(3); *Heywood v. Ziol*, 91 Ariz. 309, 311 (1962) (noting that the issue of possession "can only be

determined after a presentation of the facts and attending circumstances upon which the right to possession is claimed").

**¶19**        In June 2020, American Green exercised its first option. S&S does not argue this method was improper; it argues instead that American Green's default in removing the sign and making additions to the roof and failure to cure after the notice of default, constituted a material breach of the Lease rendering the exercise invalid under section 39.4 of the Lease. The trial court found the exercise valid because S&S waived its right to forfeiture for the sign provision and, even assuming no waiver, both the sign and roof default were immaterial and therefore did not warrant forfeiture.

### A.        The court did not err in determining that S&S has waived American Green's default under Lease's sign provision.

**¶20**        A landlord may waive the right to declare a forfeiture. *See, e.g., Chadwick v. Winn*, 101 Ariz. 533, 535 (1966). "Waiver is either the express, voluntary, intentional relinquishment of a known right or such conduct as warrants an inference of such an intentional relinquishment." *Am. Cont'l Life Ins. Co. v. Ranier Const. Co.*, 125 Ariz. 53, 55 (1980). A party waives its rights by conduct when the party engages in "acts inconsistent with an intent to assert the right." *Id.* At 55. Inasmuch as forfeitures are not favored, slight acts will be construed as a waiver of the forfeiture. *Chadwick*, 101 Ariz. at 535. Whether a party has waived a right is a question of fact reviewed for an abuse of discretion and will not be overturned unless clearly erroneous. *See N. Arizona Gas Serv., Inc. v. Petrolane Transp., Inc.*, 145 Ariz. 467, 477 (App. 1984). The court did not err in finding S&S waived the right to declare a forfeiture.

**¶21**        S&S does not dispute that it knew that the sign had been removed in 2017. It also concedes that it did not contend the sign removal was a default under the Lease until October 2020. While Howell testified that he had multiple conversations with American Green about the sign, the court was free to discredit his vague testimony about these conversations and we will not second-guess its determination on appeal. *See Double AA Builders, Ltd. V. Grand State Const. L.L.C.*, 210 Ariz. 503, 511 ¶ 41 (App. 2005) ("Our duty on review does not include re-weighing conflicting evidence."). Furthermore, continual conversation about the sign for three years rather than asserting a right to declare a default is a "slight act" waiving the right to forfeiture of the Lease. *See Chadwick*, 101 Ariz. at 535.

¶22 S&S nevertheless argues that because section 12.2 of the Lease provides that no waiver "shall be deemed a waiver . . . of any subsequent Default or Breach by Lessee of the same . . . term, covenant or condition hereof," it did not waive its right raise default and breach in 2020. Section 12.2 acknowledges, however, that S&S can waive a default or breach and precludes waiver only based on a "subsequent" default or reach, which is not what occurred here. Accordingly, the court did not err in finding that S&S has waived forfeiture under the sign provision.

### B.    American Green's purported roof default was not a material breach.

¶23 "[A] tenant's right to possession may not be conditioned on perfect performance of a commercial lease, but may be forfeited only upon a material breach." *Maleki v. Desert Palms Prof'l Properties, L.L.C.*, 222 Ariz. 327, 332 ¶ 24 (App. 2009). Arizona has adopted Restatement (Second) of Contracts § 241 for determining whether a breach of a lease is trivial or material. In determining whether a failure to render performance is material, courts look at the extent that (1) a party will be deprived of a reasonably expected benefit; (2) a party can be adequately compensated for a deprived benefit; (3) a party will suffer forfeiture; (4) a party likely will cure any failure, analyzing the totality of circumstances including any reasonable assurances; and (5) the behavior of the party failing to perform comports with good faith and fair dealing. Restatement (Second) of Contracts § 241; *Found. Dev. Corp. v. Loehmann's, Inc.*, 163 Ariz. 438, 446 (1990). Whether a breach is sufficiently material to warrant forfeiture of a leasehold is a question of fact. *Id.* at 446.

¶24 S&S did not identify any issues that would require curative action to the roof beyond the 2020 repairs. Although S&S contended that the roof breach forced it "to undertake a costly roof repair to ensure the integrity of his building," the record proves otherwise. First, the record is unclear whether the 2017 roof work resulted in any "roof penetrations" or whether anything was installed on the roof. Indeed, Gwyther testified that the modification did not substantially alter or modify the roof. While Howell opined that the earlier repairs American Green undertook caused or exacerbated the August 2020 roof damage, the trial court was free to weigh or reject his testimony as self-serving. *See Graham v. Vegetable Oil Products Co.*, 1 Ariz.App. 237, 241 (1965) ("[T]he trial court is not bound to accept as true the uncontradicted testimony of an interested party."). Second, Howell admitted that S&S's insurer "paid for the whole roof" and that only $1,000 remained as an unreimbursed cost.

**¶25** Even assuming deprivation, S&S could pursue those damages for any uncured, immaterial breaches in a separate lawsuit. *See Colonial Tri-City Ltd. P'ship v. Ben Franklin Stores, Inc.*, 179 Ariz. 428, 434 (App. 1993) ("[C]laims and counterclaims for damages for breach of a lease . . . are not issues to be determined in a forcible entry and detainer action. . . . Those issues are properly resolved in a general civil action."). Indeed, S&S concedes on appeal that it could be compensated for any damages it suffered because of the roof issue. *See, e.g., Gangadean v. Erickson*, 17 Ariz.App. 131, 134 (1972) ("The forcible entry and detainer proceeding is not a bar to a subsequent action for waste, damage, rent, or breach of the lease.").

**¶26** On the other hand, the court found, based on undisputed testimony, that American Green invested approximately $3 million into making improvements to the Building. S&S does not address this factor in its opening brief. In its reply it merely contends that American Green "knew it committed the Defaults when it was making its purported investments in the [B]uilding" but cites no evidence to support this contention. But S&S did not inform American Green of an alleged default under the Lease until October 2020. By then, American Green had already renovated the Building. S&S cites no evidence to show that American Green acted in bad faith at any time when making the renovations. Even assuming American Green's 2017 roof work constituted a default and breach of the Lease, such failure to perform was immaterial. *See* Restatement (Second) of Contracts § 241; *Loehmann's*, 163 Ariz. at 446. Accordingly, the trial court did not err in finding that American Green had the right to possess the Building.

## C. The trial court erred in determining the rent amount.

**¶27** S&S next argues that the trial court erred in determining rent. The only issue in a forcible entry and detainer trial is who is entitled to actual possession. A.R.S. § 12–1177(A); *Iverson*, 248 Ariz. at 448 ¶ 11. While the Extension included a rent schedule for the initial five-year term, it said nothing about rent for any of the three options. Both Howell and Miller testified that the parties intended to renegotiate the rental rate as each option arose. As a result, rent was not critical to determining whether American Green had exercised its option and therefore had a right to possess the Building and should therefore be resolved in a general civil action. *See, e.g., United Effort Plan Tr. V. Holm*, 209 Ariz. 347, 351 ¶ 21 (App. 2004) ("The only issue to be decided in [an FED] action is the right of actual possession. Thus, the only appropriate judgment is the dismissal of the complaint or the grant of possession to the plaintiff."). We therefore vacate that portion of the trial court's ruling.

### III.     American Green's Attorney Fees

**¶28**         American Green contends in its cross-appeal that the court erred by not awarding all its claimed fees under the Lease and A.R.S. § 12–341.01(A). We review an attorney fee award for an abuse of discretion. *Iverson*, 248 Ariz. at 451 ¶ 27. To successfully challenge an award of attorney fees, the opposing party must do so with specificity. *Cook v. Grebe*, 245 Ariz. 367, 370 ¶ 11 (App. 2018). The Lease provides for an award of "reasonable attorneys' fees" to the prevailing party "in an action or proceeding involving the Premises." It further provides that any such award "shall not be computed in accordance with any court fee schedule but shall be such as to fully reimburse all attorneys' fees reasonably incurred." American Green claims that the latter provision "constricts the Superior Court's discretion in determining whether the attorneys' fees incurred were reasonable . . . and instead require[s] a determination of whether the prevailing party acted reasonably in incurring such fees." But American Green does not explain what difference, if any, exists between determining whether incurred fees are reasonable and determining whether one acted reasonably in incurring fees. Indeed, S&S objected to nearly $50,000 of the claimed fees as excessive, duplicative, or otherwise unreasonably incurred. On this record and briefing, the trial court did not abuse its discretion.

**¶29**         American Green nevertheless argues that the court did not make "a proper finding that [the unawarded fees] were not reasonably incurred." But it cites no authority suggesting any such findings are required. Next, it contends that all fees are reasonable because its counsel's declaration, which was submitted with its fee application, said so. But this contention overlooks S&S's response and objections to the fee application. Because American Green has failed to make further specific challenges about how the court erred in its reductions, including challenging S&S's objections, *see Cook*, 245 Ariz. at 370 ¶ 11, it has abandoned the arguments on appeal, *see Robert Schalkenbach Found. v. Lincoln Found., Inc.*, 208 Ariz. 176, 180 ¶ 17 (App. 2004) (this court considers an issue not raised in an appellant's opening brief as abandoned or conceded).

### IV.     Attorney Fees and Costs on Appeal

**¶30**         Both parties request reasonable attorney fees and costs on appeal and cross-appeal. First, the Lease authorizes an award of "reasonable attorneys' fees" to the prevailing party "in an action or proceeding involving the Premises." It defines "Prevailing Party" to mean "a Party . . . who substantially obtains or defeats the relief sought." Because both parties are partially successful under the definition, we decline to

award either party fees. Second, the Lease does not call for an award of costs, A.R.S. § 12–341 states that "[t]he successful party to a civil action shall recover from his adversary all costs expended or incurred therein unless otherwise provided." Because American Green is successful on the primary issue of this FED case—possession of the Building—it may recover its taxable costs incurred in this court. *Tucson Estates Prop. Owners Ass'n, Inc. v. McGovern*, 239 Ariz. 52, 57 ¶ 17 (App. 2016).

## CONCLUSION

**¶31** For the reasons stated, we vacate that portion of the trial court judgment determining the rental rate for the three option periods under the Extension and affirm the remainder of the judgment.

