NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In the Matter of the Estate of:

DENNIS NOEL ELY, Deceased

THE ESTATE OF DENNIS NOEL ELY, *Plaintiff/Appellee*,

*v.*

CHRISTINE ELY, *Defendant/Appellant.*

No. 1 CA-CV 23-0235
FILED 01-09-2024

Appeal from the Superior Court in Maricopa County
No.  CV2021-019683
The Honorable Gary L. Popham, Jr., Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Platt & Westby, PC, Phoenix
By Peter H. Westby
*Counsel for Plaintiff/Appellee*

Christine Ely, Mesa
*Defendant/Appellant*

---

**MEMORANDUM DECISION**

Judge Daniel J. Kiley delivered the decision of the Court, in which Vice Chief Judge Randall M. Howe and Judge Jennifer M. Perkins joined.

---

**K I L E Y**, Judge:

¶1        Christine Ely ("Christine") appeals the judgment of eviction granting possession of her former residence to her father's estate (the "Estate").[1] For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        In June 2011, Christine's father Dennis Ely ("Dennis"), a citizen of the United Kingdom, bought a house in Mesa, Arizona, (the "Residence") for $90,000. The Residence was titled solely in Dennis's name. Dennis and Christine agreed that she would live in the Residence and buy it from him by making payments over time. Although he continued to reside in the U.K., Christine contends, Dennis visited her annually until 2015, when he became too ill to travel.

¶3        Christine asserts that in addition to making purchase payments to Dennis, she simultaneously maintained the Residence and paid its property taxes for "more than 5 years." She ceased making payments on the purchase contract in August 2017. By that point, according to Christine, she had paid $46,000 toward the purchase of the Residence.

¶4        Dennis died in 2018. He had signed a will in January 2017, which Christine's brother Martin Ely ("Martin") subsequently filed in the United States. The will did not mention Christine or the Residence.

¶5        After Dennis's death, the Estate demanded payment from Christine of the balance due under the purchase contract, but to no avail. The Estate then proceeded to forfeit her interest in the contract. Christine was given a deadline of December 7, 2022, to pay off the balance due. She made no payment by the deadline, and the Estate submitted an affidavit of completion of forfeiture the following day.

---

[1] Family members who share a last name will be referred to by their first names for clarity.

¶6        In January 2023, the Estate demanded possession of the Residence. When Christine failed to vacate the premises, the Estate filed a complaint seeking immediate possession of, and Christine's eviction from, the Residence.

¶7        At a hearing in March 2023, counsel for the Estate asserted that the Residence "belong[ed] to [Dennis] and is still titled in his name." Counsel further asserted that "[a]t one point" Christine "had an equitable interest in" the Residence because "[s]he was buying it" from Dennis but that "she defaulted in her payments." As a result, counsel stated, the Estate "proceeded to forfeit her interest in the contract," giving her a December 7 deadline "to pay off the contract." When "[n]o payment was made," the Estate "recorded an affidavit of completion of forfeiture" under A.R.S. § 33-745. The Estate then made a demand for possession of the Residence, but Christine did not comply.

¶8        In response, Christine did not dispute the facts as set forth by the Estate's counsel. She acknowledged that title to the Residence "was in [Dennis's] name," that she entered an agreement with him to purchase the Residence by making periodic payments, that she later stopped making those payments, and that the Estate elected to forfeit her interest in the Residence. She further admitted that she received notice to vacate the Residence in January 2023 and that she nonetheless continued to occupy it. She asserted, however, that she stopped making payments toward her purchase of the Residence with Dennis's consent. She explained that Dennis agreed that she could "suspend[] any payments" toward her purchase of the Residence while she paid expenses related to two other properties that Dennis owned in Fort Smith, Arkansas, which, Christine stated, were "in disrepair." She continued that Dennis intended "to basically split [his] properties" among his children upon his death by "forgiv[ing]" the debt she owed on the Residence while leaving "the properties in Fort Smith" to her two brothers. Instead, Christine stated, her brothers "got [her] written out of [Dennis's] will" to "grab" all three properties, "sell them off," and keep the proceeds for themselves.

¶9        Noting that the relevant facts were undisputed, the court found Christine guilty of forcible detainer under A.R.S. § 12-1173.01(a)(3). The court entered judgment (the "March 2023 Judgment") against her, ordering her to "leave and vacate" the Residence by April 4, 2023, and awarding the Estate attorney fees and costs of $3,553.32.

¶10       Christine appealed and refused to leave the Residence. The Estate then obtained a writ of restitution requiring her to vacate the

premises by June 23. Shortly before that date, Christine filed two motions seeking a stay and postponement of the eviction pending the outcome of both this appeal and of a separate suit she had filed in superior court to quiet title to the Residence.

¶11        The Estate objected to Christine's motions, arguing that she "delayed until June 19th, 2023, four days before her deadline" to vacate the premises, to file motions "in a bad faith attempt to stay the eviction." The Estate asked that Christine be required to post a supersedeas bond of $21,553.32 in the event the court stayed the eviction pending appeal, noting that A.R.S. § 12-1182(B) and Arizona Rule of Procedure for Eviction Actions 17 both require the party seeking a stay of a judgment for possession to post security for the rental value of the premises.

¶12        At a hearing on July 5, 2023, Christine stated that she no longer resided at the Residence but acknowledged that her personal possessions remained there. Stating that it would treat Christine's request to stay the eviction as a request for a bond hearing, the court ordered Christine to remove her belongings from the Residence "no later than July 19, 2023," and required her to "post a bond in the amount of $3,553.32" if she still wished to "pursue a stay of eviction." Noting that the Estate had recently filed a Motion for Entry of Judgment, the court stated that it would treat the Estate's motion as a request to amend the March 2023 Judgment and set a hearing on July 27, 2023, to address it.

¶13        On July 14, 2023, Christine filed another motion, seeking "clarification from the court regarding the validity of the eviction" and asking the court to "take appropriate actions to address any potential irregularities." After receiving evidence at the July 27 hearing, the court found that the Estate was "entitled to reasonable rent in the amount of $5,823.00 for the months of March 29, 2023 through June 28, 2023" and entered judgment for that amount in favor of the Estate. The court further stated that it would decline to consider Christine's motion to clarify the validity of her eviction, staying the issue pending the outcome of her appeal.

¶14        We have jurisdiction under A.R.S. § 12-2101(A)(1) and Article 6, Section 9, of the Arizona Constitution.

**DISCUSSION**

¶15        In her opening brief, Christine complains that Martin, who resides in the U.K., used "his close proximity" to their father to take advantage of his "deteriorating condition" by "coerc[ing]" him into making

"decisions [he] would not have made independently." "[D]riven" by "greed," she asserts, "[her] siblings, specifically Martin," exerted "undue influence" on Dennis to convince him to "exclud[e] [her] from the will," and then relied on the "fraudulent will" to "evict[]" her from the Residence and "deprive[] [her] of [her] rightful ownership and inheritance." She asks that the March 2023 Judgment be reversed in light of "the questionable validity of [Dennis's] will and the unjust enrichment of [her] siblings." She further requests "a thorough reassessment of [Dennis's] will" and "a fair and equitable distribution of his assets, including the property in question."

¶16        Christine's opening brief contains not a single citation to the record or to legal authority. Her brief thus does not comply with ARCAP 13, which requires an appellant to provide "citations of legal authorities and appropriate references to portions of the record on which the appellant relies." As case law has long recognized, a litigant's failure to make a "bona fide and reasonably intelligent effort to comply with the rules will waive issues and arguments not supported by adequate explanation, citations to the record, or authority." *Ramos v. Nichols*, 252 Ariz. 519, 522, ¶ 8 (App. 2022) (cleaned up).

¶17        Nevertheless, because "resolution of cases on their merits is preferred," *DeLong v. Merrill*, 233 Ariz. 163, 166, ¶ 9 (App. 2013), we will, in the exercise of our discretion, address the substance of Christine's arguments to the extent they are developed sufficiently for us to do so.

¶18        If the purchaser of real property is in default by failing to pay sums due under the contract, the seller may, after giving the purchaser notice and an opportunity to cure, forfeit the purchaser's interest in the property by recording an affidavit of completion of forfeiture. A.R.S. §§ 33-742(A), (D), -745(A). At that point, "the property reverts to the seller clear of all interests, liens and encumbrances" except those senior to the seller's interest. A.R.S. § 33-745(B). The seller may then serve a written demand for possession to the purchaser or other occupant of the premises and may initiate a forcible detainer proceeding if the occupant refuses to surrender possession. A.R.S. § 12-1173.01(A)(3).

¶19        A forcible detainer action "is a statutory proceeding whose object is to provide a summary, speedy and adequate means for obtaining possession of premises by one entitled to actual possession." *Colonial Tri-City Ltd. P'ship v. Ben Franklin Stores, Inc.*, 179 Ariz. 428, 433 (App. 1993). "[N]o counterclaims, offsets or cross complaints are available either as a defense or for affirmative relief in such action." *United Effort Plan Tr. v. Holm*, 209 Ariz. 347, 351, ¶ 21 (App. 2004) (cleaned up). Instead, "[t]he only

issue to be decided in the action is the right of actual possession." *Id.*; *see also* A.R.S. § 12-1177(A) ("On the trial of an action of . . . forcible detainer, the only issue shall be the right of actual possession, and the merits of title shall not be inquired into.").

**¶20** Although Christine asserts in her opening brief that she and Dennis "jointly purchased" the Residence, she admitted at the March 28 hearing that Dennis bought the Residence using his own funds and that "the title went into his name." Because she conceded at trial that Dennis alone held legal title to the Residence, she is not entitled to dispute that fact for the first time on appeal. *See Dillig v. Fisher*, 142 Ariz. 47, 51 (App. 1984) ("[A]ppellants did not raise this argument before the trial court and therefore cannot raise it for the first time on appeal."). Further, Christine's claim that she paid Dennis $46,000 toward the purchase price, if true, may establish that she had an equitable interest in the Residence, but would not change the fact that Dennis alone held legal title. *See Wayt v. Wayt*, 123 Ariz. 444, 446 (1979) ("A contract for the sale of realty does not effect a transfer of legal title. The vendor remains the owner of the legal estate, while the vendee holds an equitable interest in the property."); *Hoyle v. Dickinson*, 155 Ariz. 277, 280 (App. 1987) ("In a land contract, legal title to the property is not conveyed but remains in the vendor. After payment in full of the sums due under the contract, the purchaser then receives legal title to the property.") (cleaned up). An equitable interest in property cannot be litigated in a forcible detainer action. *See* A.R.S. § 12-1177(A).

**¶21** Christine admitted that she stopped making payments on the purchase contract for the Residence, that she did not pay the outstanding balance by the December 7 deadline, that the Estate proceeded to forfeit her interest, and that she refused to comply with the notice to vacate the premises. Under the circumstances, the Estate, as successor-in-interest to the original titleholder, was entitled to possession of the premises, and the court had no choice but to grant the requested relief. *See Holm*, 209 Ariz. at 351, ¶ 21 ("[T]he only appropriate judgment [in a forcible detainer action] is the dismissal of the complaint or the grant of possession to the plaintiff.").

**¶22** Christine's other arguments regarding the allegedly improper conduct of her siblings and the purported invalidity of her father's will are not properly raised in a forcible detainer action. *See id.* If Christine seeks to pursue claims based on those allegations, she must do so in separate proceedings.

**¶23** In its answering brief, the Estate "gives notice . . . that it will request an award of attorney fees pursuant to A.R.S. § 12-349" on the basis

that this appeal "was brought without substantial justification for the purpose of delay."

¶24      Before awarding fees under A.R.S. § 12-349, courts consider a variety of factors that may include whether a claim was brought or defended "for delay or harassment," "[w]hether the action was prosecuted or defended . . . in bad faith," and "[t]he relative financial positions of the parties involved." A.R.S. §§ 12-349, -350. Given the summary nature of the proceedings below, the present record is insufficient to enable us to determine the relevant factors. Accordingly, we grant the Estate leave to file an application for attorney fees that sets forth the factors relevant to whether to award fees as a sanction under A.R.S. § 12-349 and, if so, the amount of such a fee award. *See* ARCAP 21(b)(2). The Estate's application shall be filed within ten days of the issuance date of this decision. Christine has until ten days after the Estate's application is served on her to file a written objection to the Estate's application, and the Estate may reply within five days thereafter. Because "[a] fee award under § 12-349 must be supported by a preponderance of the evidence," *Ariz. Republican Party v. Richer*, 255 Ariz. 363, 373, ¶ 32 (App. 2023), any factual assertions in the parties' filings must be supported by affidavit or a transcript of sworn testimony.

## CONCLUSION

¶25      For the foregoing reasons, we affirm the superior court's judgment. As the prevailing party, the Estate is entitled to recover costs on appeal. Additionally, the Estate is granted leave to file an application for attorney fees, with further briefing as set forth above.



AMY M. WOOD • Clerk of the Court
FILED:      TM

7